(No. 37581.—

Elsie Cinman, Appellant, *vs.* Leonard V. Solomon *et al.,* Appellees.

*Opinion filed September 27, 1963.*

H. HOWARD JONESI, of Chicago, (SIDNEY Z. KARASIK, of counsel,) for appellant.

LEONARD V. SOLOMON, *pro se.*

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

This is a direct appeal from a decree of the superior court of Cook County which dismissed with prejudice the complaint of the plaintiff, Elsie Cinman, for specific performance of a contract for the sale of real estate. A freehold is involved.

Title to the residence in question is held by the defendant La Salle National Bank, as trustee under a land trust, and the defendant Leonard B. Solomon is the beneficiary of that trust. In August of 1956 Solomon entered into a contract by which he agreed to sell the property to Jerome Cinman for $28,000. While Jerome Cinman signed the contract as purchaser, it is undisputed that the negotiations for the purchase of the property were conducted by Samuel Cinman, the father of Jerome Cinman, and that the seller knew that Samuel Cinman and Elsie Cinman, his wife, intended to occupy the property as a residence.

The contract recited that $1000 had been paid as earnest money and provided that upon tender of possession the purchaser would pay the further sum of $27,000. The contract was expressly made "subject to the buyer securing a first

mortgage in the minimum amount of $20,000.00 within two weeks from date hereof." It further provided that "within 20 days before tender of possession" the seller should deliver to the purchaser or his agent a guarantee policy of the Chicago Title and Trust Company showing title in the seller, and that in the event the purchaser should default, "said earnest money shall be forfeited as liquidated damages." The contract further provided that at the election of either party the sale should be closed through an escrow with the Chicago Title and Trust Company, and that payment of the purchase price and delivery of the deed should be made through the escrow.

Deviations from the written contract began at once. On or before September 17, 1956, an additional $4000 was paid, and possession of the premises was delivered to Samuel and Elsie Cinman. At that time it was agreed, as the master and the trial court found, between Jerome Cinman and the defendant, Solomon, that the balance would be paid within a short time from the proceeds of a first mortgage which was to be placed upon the premises. The mortgage was not obtained, and Samuel and Elsie Cinman continued to occupy the property, making payments from time to time.

By March 4, 1958, an additional $3000 had been paid to the seller, and, as the master and the trial court found, "the seller and Samuel Cinman and Jerome Cinman all agreed that the purchaser" would assume the payment of the existing construction mortgage that had been placed on the property by the seller, the principal balance of which was then $16,475.84. Thereafter payments on the mortgage were made by Samuel Cinman, who testified that he made them on behalf of Elsie Cinman, some of them with her checks, and that receipts for the payments were made out to her.

On May 13, 1959, Solomon signed the following rider which he wrote in longhand upon the back of the original contract: "I will direct the LaSalle Nat. Bank as Trustee to

issue their Trustee's Deed to Macey Builder's, Inc. or Elsie Cinman provided all funds accrued under this contract are paid in full. The said Trustee's deed to cover premises covered by this contract. This conveyance will be in consideration of all payments made pursuant to this agreement."

On March 17, 1960, Solomon opened an escrow with the Chicago Title and Trust Company in which he deposited a deed to the property. He notified Jerome and Samuel Cinman of the opening of the escrow and demanded that the sum of $3448.16, the amount he claimed to be due upon the contract, be deposited. The sum of $321.98, the amount that they claimed was due, was deposited by Samuel and Elsie Cinman. Thereafter Solomon withdrew the deed from escrow, notified Jerome Cinman that the contract was forfeited, and commenced a forcible entry action to recover possession of the property. The plaintiff then instituted the action now before us in which she sought an accounting as to the amount due under the contract, offered to pay the amount found due upon delivery of a sufficient warranty deed and prayed for specific performance. Prosecution of the forcible entry proceeding was restrained during the pendency of the action.

In this court, as in the trial court, the dispute has centered about (1) the right of the plaintiff, Elsie Cinman, to specific performance of the contract, (2) the details of the accounting between the parties, and (3) the consequences to be attached to the failure of the seller to furnish a guarantee policy as required by the original contract.

Concerning the first of these issues, the right of the plaintiff, Elsie Cinman, to specific performance of the contract, the master's report made no findings of fact and contained no recommendations. Similarly, the decree contained no findings of fact, but it provided that "the portion of the plaintiff's Complaint pertaining to Specific Performance be dismissed with prejudice." The decree found: "That the

son Jerome Cinman was the purchaser because of his personal friendship with the defendant and the reliance on the faith and credit of said Jerome Cinman on the part of the defendant." It also found that "the purchaser" assumed the existing mortgage on March 4, 1958. It decreed: "That there is due to the defendant Leonard V. Solomon as of February 15, 1960 from Jerome Cinman, the purchaser, or any of his assignees or beneficiaries the sum of $3,448.16." But it imposed no requirement that the defendant deliver a deed to anyone upon payment of the amount found due.

The problem in this case is to achieve a just determination of the rights of the parties as they emerge from a lengthy but inadequate and confused record. The attempt of the trial court to achieve this result was not successful, and the decree can not stand. Although it held that the sole plaintiff had no right to specific performance, it proceeded to adjudicate the liability of the purchaser, Jerome Cinman, who was not a party, upon an accounting, and to determine that he had assumed the liability of the defendant Solomon upon a mortgage which Solomon had personally guaranteed. We find no evidence in the record to support the finding that Jerome Cinman assumed the mortgage. And although the decree adjudicated the amount due to the defendant Solomon, it imposed no liability upon him to convey the property upon payment of the amount so found due. It thus suggests what the plaintiff terms "a massive forfeiture," although the forfeiture provision in the original contract applied only to the initial deposit of $1000.

It is true that the record does not contain a written assignment from Jerome Cinman to Elsie Cinman. Nevertheless, by the rider that he endorsed upon the written contract, the defendant Solomon undertook to convey the property to her. He testified that he was authorized by Jerome Cinman to make that endorsement upon the contract. After the endorsement was made, additional payments were made by Elsie

Cinman and Samuel Cinman. Solomon's position is that the rider "amounts to no more than a voluntary statement of the seller that he will convey title to a nominee designated by the purchaser" which the purchaser could have rescinded. But there is no suggestion in the record that the purchaser, Jerome Cinman, ever directed a conveyance to anyone else. Jerome Cinman testified that although he had signed the contract he had no interest in the property and that no money of his was invested in it. Samuel Cinman testified that he negotiated the purchase of the property on behalf of the plaintiff, and that the payments were made on her behalf.

This evidence strongly suggests the existence of a resulting trust and is probably responsible for that portion of the decree which found that there is due from the purchaser or any of his assignees "or beneficiaries" the sum of $3448.16. Although Elsie Cinman did not sign the contract, her action in filing her bill for specific performance bound her to it. (*Laegeler* v. *Bartlett,* 10 Ill.2d 478, 482.) Under the circumstances of this case we are of the opinion that she can maintain her action for specific performance.

So far as the accounting is concerned, there is no dispute as to the amounts that were paid upon the purchase price of the property and upon the mortgage. The first of the two issues upon the accounting concerned certain expenditures made by Samuel and Elsie Cinman after they went into possession. The written contract contemplated a house fully completed in accordance with the plans and specifications, and the plaintiff asserts that the expenditures in question were necessary to complete the house. But the written contract also contemplated a cash transaction, and provided that possession was not to be delivered until the full purchase price had been paid. Allowances upon the purchase price were endorsed upon the contract to cover specified uncompleted items and both the defendant Solomon and

Jerome Cinman testified that except for these allowances the house was sold "as is." The master and the trial court so found, and the record supports that finding.

The second issue upon the accounting concerned the interest due to the defendant Solomon. The plaintiff relies upon the fact that the original contract did not provide for the payment of interest, but as has been stated, that contract contemplated a cash transaction. The contract that must be implied from the subsequent conduct of the parties is to be governed by equitable considerations, and in view of the subsequent arrangement for deferred payments, equity requires that the vendor receive interest upon the unpaid balance of the purchase price. (See *Thompson* v. *Davis,* 297 Ill. 11, 21; *McKey* v. *McCoid,* 298 Ill. 566, 572; *Duncan* v. *Dazey,* 318 Ill. 500, 527.) The decree allowed interest upon the entire unpaid balance of the purchase price until the mortgage was assumed. Thereafter interest was computed only upon the unpaid balance in excess of the mortgage, and the interest charged to the plaintiff did not, as she contends, include interest that she had already paid upon the mortgage. We find no error in the accounting.

Neither in the trial court nor in this court has any reference been made to the fact that Jerome Cinman, who signed the original contract is not a party to the complaint. Yet his rights and liabilities are involved, and the decree attempted to adjudicate them. He should be a party to this specific performance action. (See *Espadron* v. *Davis,* 385 Ill. 304, 309; cf. *Gleason & Bailey Mfg. Co.* v. *Hoffman,* 168 Ill. 25, 30.) On its own motion this court will take notice of the omission and require that it be corrected. (*Oglesby* v. *Springfield Marine Bank,* 385 Ill. 414.) Upon remandment the trial court will require that he be made a party, and will afford him an opportunity to be heard, if he desires, upon the accounting issues and upon the matter of the assumption of the mortgage.

Since the decree that will be entered upon remandment

will fix the conditions upon which payment of the balance of the purchase price is to be made and the deed and guarantee policy are to be furnished, it is unnecessary now to determine the significance to be attached to the vendor's failure to furnish a guarantee policy showing title to the property. In connection with the entry of any future decree, the court will reappraise the allocation of costs and will reconsider that portion of the present decree that reserves jurisdiction for the assessment of damages against the plaintiff.

The decree of the superior court of Cook County is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

*Reversed and remanded, with directions.*