Joseph Ash, Assignee of the First Federal Savings and Loan Association of Chicago, a United States Corporation, Plaintiff-Appellee, v. Jerome Cinman and Phyllis Cinman, His Wife, et al., Defendants-Appellants.

Gen. No. 51,649.

First District, Fourth Division.

August 28, 1968.

John D. Vosnos, of Chicago, for Appellant.

No appearance made for appellee.

MR. JUSTICE ENGLISH delivered the opinion of the court.

This appeal is taken from the trial court's disposition of an ancillary petition filed in a foreclosure suit. After the foreclosure sale of the mortgaged property, Elsie Cinman, the owner of the equity of redemption, petitioned the court for an order directing the Clerk to pay to her that part of the sale price remaining in his custody after all prior obligations had been satisfied. The petition was denied, as was a subsequent motion to vacate the order denying the petition. Petitioner has appealed and no party has appeared in this court as appellee.

The setting in which this controversy arose is a complex one, and the parties who have been the chief actors have shown themselves to be extremely litigious. In addition to the foreclosure suit, there was a suit for specific performance (of a real estate contract) brought by Elsie Cinman against Leonard Solomon, which she won on appeal (Cinman v. Solomon, 28 Ill2d 540, 193 NE2d 16). Then, to prevent her threatened eviction by Solomon, Mrs. Cinman also brought an injunction suit against him.

We shall not attempt to outline all the facts, which are not only complicated, but somewhat mixed up in the record, and pertain in only small part to the issue before us. The order which we are called upon to review denied payment to Mrs. Cinman of the remainder of the foreclosure sale funds (except upon a condition discussed below), which money no one seems to deny was properly due to her, at least so far as the proceedings in this case are concerned. The record does not show that any answer was filed to the petition, although Solomon and his attorney were present and participated in the hearing on the petition. (In this suit Solomon had not appeared, and had, in fact, been defaulted.) A few weeks later a petition to vacate the order in question was filed and to that petition Solomon did file an appearance and answer. From none of this does it appear that Solomon had any

standing to oppose either petition, as his interest in the real estate had been terminated by the Supreme Court decision implemented by delivery of a deed from him to Mrs. Cinman through escrow. Nor did he claim any part of the fund which was the subject of the petition or ask for any relief in specific regard thereto. He sought merely to block the payment of this money to Mrs. Cinman unless she would release him from all claims she might have against him, pursuant to an alleged oral settlement agreement, or an oral direction from the court in another suit, which direction was never incorporated in any order.

The facts alleged in Elsie Cinman's petition were all matters of record. The facts concerning the alleged settlement agreement were only presented orally (apparently), yet without the introduction of any evidence, the court entered the following order:

> This cause coming on to be heard on the petition of Elsie Cinman, and the Court having heard the argument of counsel, It is hereby ordered as follows:
>
> That the parties were before this Court in cause No. 64 CH 4968 (the injunction suit). That there was an agreed settlement in open court whereby the parties would deposit certain funds and a deed in an escrow and exchange mutual general releases to terminate all litigation between the parties, and the parties deposited all items required but Elsie Cinman and Samuel Cinman refused to deliver a release to Leonard V. Solomon, therefore, *this Court hereby denies the Petition of Elsie Cinman until such time as Elsie Cinman delivers a general release to Leonard V. Solomon.* (Emphasis added.)

Mrs. Cinman and her husband, Samuel, deny that they ever agreed to a settlement. If such an agreement had been entered into by the parties, it was apparently not a part of this litigation, but was a settlement reached while

they were present in open court at a hearing in one of the other equity suits. The escrow referred to in the order was, in fact, created by the parties, with money and deed being eventually exchanged, but the escrow agreement contained no provision for releases, and they were not deposited or exchanged.

We can fully understand the feelings of the conscientious chancellor, who had seen in the then forthcoming escrow an opportunity to wind up this wearisome and vexatious litigation once and for all, and had undertaken to encourage the parties to settle their differences by the exchange of releases. Whether the parties did agree to a settlement, and, if so, whether, where, and how it would be enforceable, are questions we do not pass upon here. Neither the existence nor the validity and enforceability of such an agreement were presented as a proper part of this proceeding in regard to disposition of the foreclosure sale funds. The condition attached to the chancellor's order may have been a highly practical solution to long and grievous problems, but it was an extra-legal one under the circumstances, and the order must therefore be reversed.

The cause is remanded with direction to allow the petition of Elsie Cinman and to direct the Clerk to pay to her the surplus funds from the foreclosure sale, after satisfying all prior obligations.

Reversed and remanded with directions.

McCORMICK, P. J. and DRUCKER, J., concur.