ST. CHARLES SAVINGS & LOAN ASSOCIATION, Plaintiff, v. THE ESTATE OF WALTER J. SUNDBERG, Deceased, *et al.*, Defendants (United States, Defendant-Appellant; Betty Sundberg *et al.*, Defendants-Appellees).

Second District   No. 85—0437

Opinion filed November 24, 1986.

Anton R. Valukas, United States Attorney, of Chicago, and Daniel Bensing, Leonard Schaitman, and Robert K. Willard, all of Department of Justice, of Washington, D.C. (Carol A. Davilo, Assistant United States Attorney, of counsel), for appellant.

Leonard J. Seraphin, of Schifeling & Seraphin, Ltd., of St. Charles, for appellees.

JUSTICE STROUSE delivered the opinion of the court:

This action was brought by the Small Business Administration (SBA) to recover the $75,000 proceeds of a foreclosure sale which were paid to the widow of an SBA-guaranteed borrower instead of to the United States. Following the entry of an order for foreclosure and the denials of the United States' petition for a turnover order and motion for reconsideration, the United States appealed.

In 1975 a $400,000 SBA-guaranteed loan was made by the Aurora National Bank (bank) to K & E Industries, Inc. (K & E Industries). This loan was personally guaranteed by Mr. Walter Sundberg (who was the president of K & E Industries), who assigned to the bank, as collateral, the beneficial interest in a land trust which held title to his residence. Mr. Sundberg was the sole owner of the beneficial interest in the land trust, subject only to the first mortgage held by plaintiff, St. Charles Savings & Loan Association (plaintiff). The trustee of the land trust was Chicago Title & Trust Company (trustee).

Sometime in 1982, K & E Industries defaulted on the note. On July 16, 1982, following the default, the SBA reimbursed the bank pursuant to its guarantee, and the bank assigned the note to the SBA. However, no assignment of the beneficial interest in the land trust on the Sundberg residence was made.

Almost one year later, on April 6, 1983, Mr. Sundberg died. The first mortgage on his home went into default, and, on March 8, 1984, the plaintiff filed its complaint in foreclosure naming the estate of Walter Sundberg, the trustee, the United States of America, and unknown owners, as defendants. After Walter Sundberg's death, Esther E. Johnson, his sister, as the successor beneficiary under the original trust agreement and now owner of the entire beneficial interest, assigned her interest to Mrs. Sundberg. Appropriate service was made on the United States Attorney's office. The United States was joined on the basis of the government guarantee of the loans.

On May 2, 1984, defendants Sundberg and the trustee filed their answer and affirmative defense objecting to the foreclosure and denying the interest of the United States. The bank, upon discovering that it had not transferred the assignment of the beneficial interest in the land trust, executed an assignment of Mr. Sundberg's interest to the United States on May 9, 1984. This assignment inadvertently bore the legend "For Collateral Purposes Only" and was rejected by the trustee.

On May 25, 1984, defendant, the United States of America, filed its answer on behalf of the SBA. The United States stated that it had a lien against the real estate "in the nature of a mortgage" and alleged its interest as a creditor of Walter Sundberg, who, they alleged, owed the United States $303,202.04 in principal, and $112,044.93 in accrued interest. In its prayer for relief, the United States asked the court to "find, adjudge and determine the amount, validity and priority of all liens claimed upon the real estate in question."

On May 29, 1984, the court heard plaintiff's motion for summary judgment. No attorney for the United States appeared. Plaintiff's motion included a paragraph recognizing the interest of the United States, but no evidence of the amount of the debt owed the United States was presented. Counsel for codefendants objected to the inclusion of the interest of the United States and the following colloquy ensued:

"MR. GAFFNEY [counsel for plaintiff St. Charles Savings & Loan]: One aspect of it, Judge, which is nevertheless uncertain, I just—I expected that the United States of America would appear and file an affidavit and they have not. Now I've left a blank at Paragraph 15, which provides that they have a second lien, but quite frankly, I have no figure to put in there because they haven't appeared giving me a figure.

MR. SERAPHIN [counsel for defendants Sundberg and Chicago Title]: In all honesty, your Honor, with respect to this sec-

ond lien, we feel that they have failed, again, to comply with some technical provisions of the assignment and they really don't have a valid interest at this point."

The trial court, that same day, ordered that the paragraph reciting the interest of the United States be deleted; that the estate of Mr. Sundberg be dismissed as a party defendant; that the unknown owners be found in default; that the mortgage be adjudged foreclosed; and that the Chicago Title and Trust Company have the sole right of redemption. The trial court ordered the real estate to be sold at a public auction to the highest bidder.

On August 1, 1984, the bank executed an assignment of the beneficial interest to the United States.

Subsequently, on August 2, 1984, the United States filed a motion for entry of amended judgment of foreclosure and sale, claiming the beneficial interest. Because it was filed more than 30 days from the judgment of foreclosure, the motion was denied on October 25, 1984.

The foreclosure sale was held on November 1, 1984, and the SBA was the successful bidder at a price of $130,000. After payment of the first mortgage to plaintiff, a surplus of approximately $75,000 remained with the sheriff. The court instructed the sheriff to place the funds in an escrow account pending the outcome of this appeal.

On November 1, 1984, the United States filed a petition for turnover of the surplus funds. Mrs. Sundberg, who was now entitled to the funds, filed a counterpetition on December 6, 1984. After the parties briefed and argued the issue, the court granted Mrs. Sundberg's counterpetition on February 25, 1985.

On March 25, 1985, the United States filed a motion for reconsideration and rehearing, which was denied on April 26, 1985. The United States appealed.

The sole contention of the United States is that the trial court erred in denying it the surplus funds from the foreclosure sale. We disagree and affirm the holding of the lower court for the following reasons.

■ In an Illinois land trust, both the legal and equitable title to the trust property lie with the land-trust trustee. A land trust differs from a conventional trust, under which the trustee holds legal title and the beneficiary holds equitable title. (*Melrose Park National Bank v. Melrose Park National Bank* (1984), 123 Ill. App. 3d 282, 285.) The land-trust beneficiary retains a personal property interest; he does not possess a direct interest in the real estate *res* of the trust. (123 Ill. App. 3d 282, 285.) The trust beneficiary may assign or transfer his beneficial interest, but this interest is only an interest in personal

property; the transaction does not give the assignee a direct interest in the realty *res* of the trust. 123 Ill. App. 3d 282, 285; see also *First Federal Savings & Loan Association v. Pogue* (1979), 72 Ill. App. 3d 54, 56.

■ The principles applicable to acquiring a security interest in the beneficial interest of an Illinois land trust are the same as those applicable to acquiring a security interest in personalty. The creation of a security interest in personal property is governed by article IX of the Uniform Commercial Code (Ill. Rev. Stat. 1983, ch. 26, par. 9—101 *et seq.*; see also *Melrose Park National Bank v. Melrose Park National Bank* (1984), 123 Ill. App. 3d 282, 285.) In *Melrose Park National Bank*, the court distinguished two types of interest which can be created when a beneficiary assigns his beneficial interest in a land trust. One is controlled by the Uniform Commercial Code (Ill. Rev. Stat. 1983, ch. 26, par. 9—101 *et seq.*), the other by Illinois mortgage law (Ill. Rev. Stat. 1983, ch. 110, par. 15—101 *et seq.*). (See generally *Melrose Park National Bank v. Melrose Park National Bank* (1984), 123 Ill. App. 3d 282, 286-88.) The equitable mortgage is subject to the right of redemption and may be attached by a judgment lien; the beneficial interest is not subject to the right of redemption, and judgment liens do not attach. (123 Ill. App. 3d 282, 286.) The court distinguished the two by pointing to four factors. Where the trust agreement does not provide for the sale of the real estate upon default, where the trust is not created for securing a specific debt, where the assignment of the beneficial interest occurs subsequent to the creation of the trust; and where the assignment concerned only the beneficial interest in the trust, a court will generally determine that the party intended to create a personal property security interest rather than an equitable mortgage. (123 Ill. App. 3d 282, 287 (and cases cited therein).) In the instant case, all factors support Mrs. Sundberg's contention that the SBA did not have an equitable mortgage, but a personal property security interest. The trial court was correct in so finding.

■ In order to perfect a security interest, thereby taking priority over the rights of the debtor and third parties, the party must proceed pursuant to article IX of the Uniform Commercial Code. (Ill. Rev. Stat. 1983, ch. 26, par. 9—101 *et seq.*; *First Federal Savings & Loan Association v. Pogue* (1979), 72 Ill. App. 3d 54, 56.) A security interest is not enforceable against a debtor of third parties with respect to the collateral and does not attach unless the steps found in section 9—203 are taken. Section 9—203 provides:

"[A] security interest is not enforceable against the debtor or

third parties with respect to the collateral and does not attach unless

(a) the collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral ***; and

(b) value has been given; and

(c) the debtor has rights in the collateral.

(2) A security interest attaches when it becomes enforceable against the debtor with respect to the collateral. Attachment occurs as soon as all of the events specified in subsection (1) have taken place unless explicit agreement postpones the time of attaching." (Ill. Rev. Stat. 1983, ch. 26, par. 9—203.)

Since there was no security agreement concerning the beneficial interest of the land trust, the SBA's claim must fail. The SBA contends that *First Federal Savings & Loan Association v. Pogue* (1979), 72 Ill. App. 3d 54, is analogous to the instant case and dictates that we must reverse the lower court. We cannot agree. In *Pogue* the competing creditors were judgment creditors, and Downers Grove had complied with the provisions of section 9—203 of the Uniform Commercial Code in that it had a valid security agreement. Therefore, the perfected security interest was enforceable against the debtor. Clearly, the SBA did not have a proper security agreement until well after its rights were adjudicated by the trial court. See *Melrose Park National Bank v. Melrose Park National Bank* (1984), 123 Ill. App. 3d 282, 286.

■ Any surplus generated by a sheriff's sale in a foreclosure proceeding belongs only to the owner of equity of redemption (*Ash v. Cinman* (1968), 99 Ill. App. 2d 325; *Central Republic Bank & Trust Co. v. Bent* (1935), 281 Ill. App. 365), and it may be reached only by creditors of the owner of the equity of redemption for the repayment of his debts (*Hart v. Wingart* (1876), 83 Ill. 282; *Central Republic Bank & Trust Co. v. Bent* (1935), 281 Ill. App. 365). The trial court found that the owner of the equity of redemption was the trustee. The holder of the beneficial interest in the trust was Betty Sundberg.

■ The SBA was a creditor of Mr. Sundberg. However, it did not take action to reduce its rights to that of a judgment creditor. A judgment creditor is entitled to share in the surplus generated at the foreclosure sale only to the extent that he has taken the proper steps to enforce his rights as a judgment creditor. (See *Central Republic Bank & Trust Co. v. Bent* (1935), 281 Ill. App. 365, 373.) Any interest which the SBA had was an interest in personal property and not a

direct lien on the real estate since a judgment against a beneficiary does not create a lien against the title of real estate held in a land trust. (*First Federal Savings & Loan Association v. Pogue* (1979), 72 Ill. App. 3d 54; *Chicago Title & Trust Co. v. Mercantile Trust & Savings Bank* (1939), 300 Ill. App. 329.) This is also supported by section 12—101 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 12—101), which provides that the judgment of a court of record shall be a lien on the real estate of the person against whom it is rendered. Because the beneficiary in a land trust has no legal or equitable interest to the title to the real estate, a judgment would not create a lien against the beneficial interest thereof. Furthermore, title to real estate held in a land trust is not subject to a statutory lien. (*Nelson v. Folegstrom* (1972), 5 Ill. App. 3d 804, 806.) Finally, the original assignment to the bank "for collateral purpose only" did not create a lien on the real estate which was held in the trust, and, therefore, when the SBA failed to have its interest included in the foreclosure decree of May 29, 1984, it lost its chance of having its claim become a lien on the real estate.

■ Therefore, for the SBA to succeed it needed to have secured a lien on the personal property, *i.e.*, the beneficial interest of the trust. It could have pursued this under article IX of the Uniform Commercial Code (UCC) (Ill. Rev. Stat. 1983, ch. 26, par. 9—301 *et seq.*). This article specifically deals with the perfection of a security interest in a land trust. The provision states that it is unnecessary for a creditor to file a UCC filing statement if it is "a security interest created by an assignment of a beneficial interest in a trust or a decedent's estate." (Ill. Rev. Stat. 1983, ch. 26, par. 9—302(1)(c).) But, it must be signed by all of the appropriate parties, including the trustee. The provisions of the trust agreement then govern the requirement necessary for the completion of an assignment. The second paragraph of the trust in the instant case states:

> "No assignment of any beneficial interest hereunder shall be binding on the trustee until the original or a duplicate of the assignment is lodged with the trustee, and every assignment of any beneficial interest hereunder, the original or duplicate of which shall not have been lodged with the trustee, shall be void as to all subsequent assignees or purchasers without notice."

The SBA failed to have the bank legally assign its beneficial interest in the trust. Yet, it was on notice that it needed to contact the land trustee prior to taking any action against the collateral. The January 5, 1976, assignment to the bank has clearly stamped thereon the following legend:

"In the event of a default by the debtor, before proceeding against the collateral, the creditor should contact the land trust administrator to ascertain the latter's requirements."

If the SBA had contacted the trustee prior to filing its answer, it would have learned that no assignment had ever been made to the SBA. The SBA, having learned of its error, immediately had the bank execute an assignment of its interest in the trust on August 1, 1985. This, however, was too late to save the SBA's claim.

■ Sections 9—501 through 9—507 of the Uniform Commercial Code set forth the procedures which the secured party must undertake when there is a default by the debtor. Section 9—501(1) provides:

"When a debtor is in default under a security agreement, a secured party has the rights and remedies provided in this Part and except as limited by subsection (3) those provided in the security agreement. He may reduce his claim to judgment, foreclose or otherwise enforce the security interest by any available judicial procedure. If the collateral is documents the secured party may proceed either as to the documents or as to the goods covered thereby. A secured party in possession has the rights, remedies and duties provided in Section 9—207. The rights and remedies referred to in this subsection are cumulative." (Ill. Rev. Stat. 1983, ch. 26, par. 9—501(1).)

Section 9—501(4) gives the creditor the option of proceeding against the real estate or pursuing relief under article IX by conducting a sale of the collateral pursuant to section 9—504:

"If the security agreement covers both real and personal property, the secured party may proceed under this Part as to the personal property or he may proceed as to both the real and the personal property in accordance with his rights and remedies with respect to the real property in which case the provisions of this Part do not apply." (Ill. Rev. Stat. 1983, ch. 26, par. 9—501(4).)

The court, in its February 25, 1984, order, stated that having been denied relief in the foreclosure proceeding, the SBA could have pursued article IX relief. We agree. All of this is to underscore that the United States did not take action sufficient to preserve its rights as a junior lienor in the beneficial interest in the land trust.

The United States argues that *Bernhardt v. Fritzshall* (1973), 9 Ill. App. 3d 1041, 1046, states that its filing of an answer and its appearance both acted as sufficient actions to preserve its rights. Certainly *Bernhardt* supports the proposition that when a second mortgagee joins in a foreclosure suit as a codefendant his answer is sufficient

to allow adjudication of his claim. This, however, does not help the government since it failed in other respects to protect its claim. The trial court was confronted with the following situation. It had before it the SBA, which was served and treated as a party with an interest. The SBA indicated in its answer that it did have an interest. The SBA participated in the lawsuit in which the court was determining the outstanding interests in the Sundberg residence. The parties set the matter for a disposition of all pending matters. On that date, the other parties were present and proved their own interests, and the government should have introduced evidence to prove its interest and right to the proceeds, if any, after the sale. The government did not appear or introduce any evidence. The court, on the basis of evidence introduced, ruled on the equity of redemption adversely to the SBA. The court found the only interest in the trustee and the beneficial interest in Mrs. Sundberg. She had the only right to surplus from the sale. The court found against all other parties, including the SBA. The government did not attempt, within 30 days, to vacate, set aside, explain, justify, or appeal that decision.

■ The government then apparently realized that there would be a surplus in which it would have no interest under the original suit. So it attempted to assert its original interest through a section 2—1401 proceeding (Ill. Rev. Stat. 1983, ch. 110, par. 2—1401). It filed a petition to amend which was neither supported by affidavit nor other appropriate showing as to matters not of the record, in violation of section 2—1401(b) (Ill. Rev. Stat.. 1983, ch. 110, par. 2—1401(b)). The petition was merely a reallegation of all of the facts which were included in the original action. The motion of the SBA did not plead any facts which would have shown the exercise of due diligence in presenting the filing of section 2—1401 petition, nor that through no fault or negligence of his own, an error of fact or a valid claim or defense was not made to appear to the trial court at the time the challenged judgment was entered. See *Brewer v. Moore* (1984), 121 Ill. App. 3d 423, 427; see also *Verson Allsteel Press Co. v. Mackworth Rees, Division of Avis Industrial, Inc.* (1981), 99 Ill. App. 3d 789, 792.

During the course of that motion, the SBA discovered that its interest was defective for want of a valid assignment. So it was, in effect, only a general creditor of the decedent. It took no steps to protect its interest as a general creditor. It did take an assignment of an interest which had been previously adjudicated adversely to the SBA. There was a surplus from the sale. The SBA then again attempted to relitigate the matter by filing a turnover petition.

The SBA contended in that court, and again on appeal, that the May 29 order did not adjudicate any interest held by either the United States or by the bank and, therefore, would create no *res judicata* bar to the entry of the turnover order later sought from the trial court. The SBA argues that the reason that the order had no legal effect on the United States is that the United States held no valid interest in the trust at the time. There had been no assignment of the beneficial interest in the land trust until after the foreclosure decree.

■■ ■ We disagree. The foreclosure order of May 29, 1984, properly adjudicated the interests of all the parties involved, and the doctrine of *res judicata* precludes the SBA from relitigating this matter. The doctrine of *res judicata* provides that a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand, or cause of action. (*Housing Authority for La Salle County v. YMCA* (1984), 101 Ill. 2d 246, 251.) This principle extends not only to questions which were actually litigated, but also to all questions which could have been raised or determined. (*Local 336, International Brotherhood of Electrical Workers v. Angelacos* (1986), 144 Ill. App. 3d 1060, 1064.) In *Angelacos*, the local union sought to enforce a fine imposed by it against the defendant. The fine had been imposed in violation of union bylaws, which required that a member must be given notice of the charges and allowed a hearing. When the member resued to pay the fine, the union commenced a small claims action to collect it. The case proceeded to a jury trial, and the defendant's motion for a directed verdict was granted on the basis that the fine was imposed *ex parte* and in violation of the union bylaws. The union did not appeal this decision but, instead, served defendant with notice and reconvened its board to hear the charges again. The board fined defendant, who, again, refused to pay the fine. His motion to dismiss was granted in his favor on the grounds of *res judicata*. The union argued that the first trial was not "on the merits" since it had failed to follow certain required procedural safeguards. The appellate court disagreed, finding that the trial court had jurisdiction of the parties and the subject matter, that the evidence was insufficient to establish that plaintiff had been given notice of the charges and hearing, and that the court had entered judgment for the defendant.

■■ In the instant case, the trial court had jurisdiction of the parties and the subject matter. Clearly the SBA and defendants, Betty Sundberg and trustee, had notice of the foreclosure proceeding. They entered their appearances and filed their answers with the

court. The SBA, as a named defendant, submitted itself to the jurisdiction of the court and claimed it had a lien against the real estate "in the nature of a mortgage," and that Mr. Sundberg owed the United States approximately $400,000. In its prayer for relief, the United States asked the court to "find, adjudge and determine the amount, validity and priority of all liens claimed upon the real estate in question." From the answers filed, an issue clearly existed between the SBA and Mrs. Sundberg. The court was fully apprised as to why the SBA should be denied relief. After reviewing the pleadings, evidence, and arguments, the court determined that the equities were with Betty Sundberg. That May 29, 1984, order was a final, appealable order. It set forth the rights of the plaintiff and the various defendants. Unknown owners were defaulted and the interest of the SBA was denied. That order was never appealed or successfully vacated. The United States cannot now claim that, because it failed to successfully attain the beneficial interest from the bank, the trial court's order was a nullity to it and that it should be allowed to relitigate this in the form of a turnover petition.

In conclusion, we find that the trial court did not err in denying the United States the surplus of the foreclosure sale. Prior to August 1, 1984, the United States only had an unperfected security interest in the land trust. Through its own negligence, it failed to litigate this interest in the foreclosure proceeding. Since it failed to perfect its interest in the trust, it was not entitled to any priority over the other defendants in the action. Furthermore, the principle of *res judicata* bars reconsideration of the matter litigated and passed upon by the court.

Affirmed.

NASH, P.J., and HOPF, J., concur.