**In re Karen M. GOODE, Debtor.**

**Bankruptcy No. 91 B 03128.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

Sept. 21, 1991.

Leon C. Wexler, Chicago, Ill., for First State Bank of Chicago.

Forrest L. Ingram, J. Barton Kalish & Colleagues, Chicago, Ill., for debtor.

FINDINGS OF FACT AND CONCLUSIONS OF LAW ON THE MOTION OF FIRST STATE BANK OF CHICAGO TO MODIFY THE AUTOMATIC STAY

JACK B. SCHMETTERER, Bankruptcy Judge.

The debtor Karen M. Goode ("Debtor") filed this proceeding under Chapter 11 of the Bankruptcy Code, Title 11 U.S.C. First State Bank of Chicago ("First State") moved to modify the automatic stay ("Motion") to allow First State to pursue its remedies against the Debtor in state court. Debtor guaranteed a loan made by First State to an entity called Alexander P. Goode and Associates ("APG") by executing a Security Agreement which included as collateral the assignment of Debtor's beneficial interest in a certain land trust. The res of the land trust is the personal residence of Debtor. Because APG has defaulted on the loan, First State seeks to modify the stay in order to proceed with a UCC sale which was scheduled prior to the filing of the bankruptcy petition. First State asserts that it lacks adequate protection with regard to its security interest, and that the residence is not necessary to an effective reorganization.

Debtor in turn argues that the assignment of beneficial interest was not perfected under Illinois law until approximately 15 days prior to the bankruptcy, and therefore is voidable as a preference under Section 547 of the Bankruptcy Code ("Code"). Debtor also contends that because a trustee takes the rights of a hypothetical bona fide purchaser without notice under Section 544(a)(3) of the Code, and because a debtor stands in the shoes of a trustee under Section 1107(a), Debtor here may avoid the assignment of beneficial interest pursuant to its putative rights as a bona fide purchaser.

Trial was held on the Motion beginning May 2, 1991. Evidence was admitted and final argument heard. At the conclusion of the trial, the Court found under Illinois law that the assignment of beneficial interest had been perfected outside the 90–day preference period. However, on May 13, 1991, the Court denied the Motion, ordering that the stay would remain in effect as long as APG, as obligor of the loan, made monthly adequate protection payments to First State in the amount of $2,700. The Court now makes the following Findings of Fact and Conclusions of Law in support of that Order.

FINDINGS OF FACT

The following facts are stipulated, otherwise uncontested, or are part of the record of the proceedings herein:

1. On May 27, 1986, Debtor and her husband, Herbert Goode ("Mr. Goode") entered into a land trust agreement with

Parkway Bank and Trust Company as Trustee under Trust No. 7786 ("Parkway Bank" or "Trustee") ("Trust Agreement"). The Trust Agreement provided the following:

No assignment of beneficial interest hereunder shall be binding on the Trustee until the original or an executed duplicate copy of the assignment, in such form as the Trustee may approve, is lodged with the Trustee and its endorsement indicated thereon, and the reasonable fees of the Trustee for the acceptance thereof paid; and every assignment of any beneficial interest hereunder, the original or duplicate of which shall have been lodged with the Trustee, shall be void as to all subsequent assignees or purchasers without notice.

2. Debtor and Mr. Goode were joint beneficiaries of the trust. The trust res is Debtor's residence at 12509 South 89th Avenue, Palos Park, Illinois. On June 24, 1986, Mr. Goode assigned to Debtor one hundred percent of his beneficial interest in the trust.

3. The parties have stipulated that, after all liens are taken into consideration, Debtor has equity in the trust res in the amount of approximately $40,000. The gross value of the home is estimated to be $250,000.

4. On March 12, 1988, Mr. Goode, as president of Silver Cloud Fine Arts, Inc. ("Silver Cloud"), executed a note in favor of First State Bank of Chicago ("First State") in the amount of $215,000.

5. Mr. Goode secured the above Note with collateral comprised of Silver Cloud's business assets and an assignment of beneficial interest in Trust No. 431 at Capitol Bank of Chicago. The res of Trust No. 431 was a condominium owned by Mr. Goode.

6. On July 28, 1988, Debtor assigned the beneficial interest in Land Trust No. 7786 to Prudential Insurance Company ("Prudential") to secure a loan in the amount of $150,000. Prudential also took a first mortgage on the trust res.

7. On September 8, 1988, Mr. Goode executed a renewal note in favor of First State for the balance of the loan to Silver Cloud, in the amount of $192,572.72. The original amount of the loan had been paid down from proceeds of a sale of the condominium held in Trust No. 431. The renewal note was secured by the business assets of Silver Cloud.

8. As of November 1988, Mr. Goode was the chief operating officer of an Illinois corporation called Alexander Patrick Goode & Associates, Inc. ("APG"). Debtor was, and still is, sole owner of APG.

9. The Court has determined that the assets of Debtor and APG do not exceed $172,500.

10. On November 29, 1988, APG purchased the assets of Silver Cloud, which had been experiencing financial difficulties. Accordingly, Mr. Goode and Debtor executed documents relating to the assumption by APG of Silver Cloud's obligations to First State.

11. Among the foregoing executed documents was a document entitled "Security Agreement and Assignment [of] Interest in Land Trust" (the "Security Agreement"). The Security Agreement purported to secure

Promissory Note executed by Debtor to the Bank dated November 29, 1988 in the principal amount of [$195,252.47] and any extensions, renewals or refinancings thereof; ... [and] any other indebtedness or liability of Debtor to the Bank whether direct or indirect....

Debtor had executed a guaranty of APG's debt to First State in the amount of $195,-252.57.

12. As part of the Security Agreement Debtor also executed an assignment of Debtor's beneficial interest in Parkway Land Trust No. 7786 ("Assignment").

13. On November 30, 1988, the original Security Agreement and Assignment were in the possession of First State, which subsequently transmitted them to Trustee Parkway Bank for acknowledgment. Although Parkway Bank received the Assignment, it did not endorse it since Parkway Bank had not received the written consent of Prudential, the prior assignee. Instead,

Parkway Bank returned the documents to First State.

14. On or about January 28, 1989, First State sent the original Assignment to Prudential Home Mortgage Co., Inc. ("Prudential"). First State requested that Prudential consent to the assignment to First State of the beneficial interest in Trust. No. 7786, subject to Prudential's interest. Prudential never responded. The original Assignment may remain in the possession of Prudential.

15. Sometime in the fall of 1989, First State requested that Debtor and Mr. Goode execute duplicate originals of the Security Agreement and Assignment. Debtor and Mr. Goode refused.

16. On or about May 30, 1990, Mr. Goode executed a renewal note to First State on behalf of APG in the amount of $184,854.18 ("Renewal Note"). APG defaulted on the Renewal Note. First State made demand on APG for payment following the default, but no payment has been made.

17. Sometime in January 1991, First State notified Debtor that her residence would be sold at a Uniform Commercial Code ("UCC") sale.

18. On or about January 29, 1991, First State prepared copies of the Security Agreement and Assignment, and transmitted them to Parkway Bank. On or about January 31, 1991, Parkway Bank received and endorsed the copies.[1] The following language was placed next to the Trustee's endorsement of the Assignment:

> THIS ASSIGNMENT IS SUBJECT AND SUBORDINATE TO THE PRIOR COLLATERAL ASSIGNMENT TO PRUDENTIAL HOME MORTGAGE COMPANY. THIS ASSIGNMENT SHALL NOT IN ANY MANNER OR FASHION EFFECT [sic] THE PRIOR ASSIGNMENT, I.E., NO NOTICE IS REQUIRED TO FIRST STATE BANK IN THE EVENT OF A COLLATERAL SALE BY PRUDENTIAL AND DIRST [sic] STATE SHALL NOT HAVE A POWER OF DIRECTION.

19. On February 13, 1991, Debtor filed her petition for relief under Chapter 11 of Title 11 of the U.S. Bankruptcy Code ("Code").

20. Fact statements contained in the Conclusions of Law will stand as additional Statements of Fact.

### Conclusions of Law

### Jurisdiction

1. This Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. § 1334(a). Because the motion before the Court is a Motion to modify the automatic stay, this proceeding is a core proceeding pursuant to § 157(b)(2)(G).

### Perfection of the Assignment to First State of the Beneficial Interest in Land Trust No. 7786

2. In defense to the Motion to modify the stay, Debtor argues under Illinois law that the Assignment was never perfected, and if it was, it was not perfected until January 31, 1991. Therefore, Debtor concludes, the Assignment was not perfected until less than 90 days prior to the filing of the bankruptcy petition, and constitutes a voidable preference under Section 547 of the Bankruptcy Code, Title 11 U.S.C. § 547.

3. In particular, Debtor contends that because Parkway Bank did not endorse the Assignment until January 31, 1991, the Assignment was not lodged, and therefore was not perfected, until that date. First State argues that the initial receipt of the original executed Assignment by Parkway Bank on November 29, 1988 was sufficient to perfect the Assignment under Illinois law even in the absence of the Trustee's endorsement.

4. Because bankruptcy courts look to state law in determining property rights, the question of when the Assignment was perfected is resolved by reference to Illinois law. *See T.M. Sweeney & Sons, LTL Services, Inc.*, 120 B.R. 101, 104 (Bankr.

---

**1.** Parkway Bank endorsed the Assignment after receiving instructions to that effect from counsel for Parkway Bank, who was also, and continues to be, counsel for First State.

N.D.Ill.1990), citing *In re Skelly*, 38 B.R. 1000, 1001 (Bankr.Del.1984).

█ 5. A beneficial interest in an Illinois land trust is an interest in personal property rather than a direct interest in the real estate res of the trust. *First Federal Sav. & Loan Ass'n v. Pogue*, 72 Ill.App.3d 54, 27 Ill.Dec. 588, 591, 389 N.E.2d 652, 655 (2d Dist.1979). Accordingly, issues regarding the perfection of an assignment of beneficial interest ("ABI") are governed by the Illinois Uniform Commercial Code, Ill.Rev. Stat., ch. 26, ¶ 9–101, *et seq.* ("UCC").

6. Three sections of the UCC are relevant here. Section 9–302 provides instances where filing is required to perfect a security interest and states in relevant part:

(1) A financing statement must be filed to perfect all security interests *except* the following:

(c) a security interest created by an assignment of beneficial interest in a trust or a decedent's estate.... Ill.Rev.Stat. ch. 26, ¶ 9–302 (emphasis supplied).

7. The Illinois Code Comment explains that Section 9–302 changed the rule previously followed in *Levine v. Pascal*, 94 Ill. App.2d 43, 236 N.E.2d 425 (1st Dist.1968), which held that an ABI was a general intangible that could only be perfected by filing. The Comment notes that filing is no longer necessary to perfect a security interest in a beneficial interest in a trust. This Comment has been interpreted to mean that although filing is no longer required, perfection of an ABI is still governed by the UCC. *See In re Loop Hosp. Partnership*, 50 B.R. 565, 568 (Bankr. N.D.Ill.1985).

8. Section 9–303 of the UCC provides that a security interest is perfected as follows:

(1) A security interest is perfected when it has attached and when all the applicable steps required for perfection have been taken. Such steps are specified in Sections 9–302, 9–304, 9–305, and 9–306. If such steps are taken before the security interest attaches, it is perfected at the time when it attaches. Ill.Rev.Stat. ch. 26, ¶ 9–303.

9. Accordingly, a security interest attaches pursuant to Section 9–203(1) when:

(a) The collateral is in possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral ..., and

(b) value has been given; and

(c) the debtor has rights in the collateral. Ill.Rev.Stat. ch. 26, ¶ 9–203(1).

10. Thus, from the relevant statutes, a security interest in an ABI is perfected as long as the requirements for attachment under Section 9–203(2) are met, regardless of whether there is lodging with or endorsement by the land trustee. Since ABIs are no longer subject to the filing requirement of Section 9–302, there appears to be no other requirement for perfection other than what is provided in Section 9–203(2). There is no section of the UCC which requires that an ABI be lodged with or endorsed by a land trustee in order to perfect the ABI. *See Loop Hospital*, 50 B.R. at 569 ("a security interest [in an ABI] is apparently perfected even without provision of notice to third parties"); *Pogue*, 27 Ill.Dec. at 592, 389 N.E.2d at 656 (in which the court concluded that because filing was no longer necessary to perfect a security interest in an ABI, the security interest at issue attached at the time the ABI was executed by the assignor as security for a note).

11. Debtor argues that Illinois precedent has required endorsement by a land trustee for perfection of an ABI, and cites to one case in support of that proposition, *St. Charles Sav. & Loan Ass'n v. Sundberg*, 150 Ill.App.3d 100, 103 Ill.Dec. 301, 501 N.E.2d 322 (2d Dist.1986). The Court also notes that in *In re Einoder*, 55 B.R. 319 n. 2 (Bankr.N.D.Ill.1985), the court mentioned in a footnote that "lodging with the land trustee is the means for perfecting the security interest [in beneficial interests in land trusts]." *Einoder*, 55 B.R. at 319, n. 2, citing Kenoe on Land Trusts, ¶ 3.12 (Supp.1985).

12. However, after reviewing *Sundberg* and *Einoder*, the Court agrees with the

decision of the District Court in *FDIC v. Wooten,* 80 B.R. 917 (N.D.Ill.1987)[2], which found both of the earlier cases to be unsupported by reason or authority regarding the necessity of lodging.

13. In *FDIC,* the court reviewed certain sections of the Illinois UCC and concluded, there is no statutory requirement that an ABI must be lodged or acknowledged by the land trustee in order to be perfected. *FDIC,* 80 B.R. at 919. The debtor in *FDIC* cited to *Einoder* and *Sundberg* as support for the proposition that acceptance by the land trustee was in fact essential for perfection of an ABI. The *FDIC* court responded that "an examination of those cases reveals that the support that can be found for this proposition consists of obiter dicta unsupported by any reasoned analysis." *Id.*

14. First, the *FDIC* opinion observed that in stating "lodging with the land trustee is the means for perfecting the security interest [in an ABI]," *Einoder* merely cited to Kenoe On Land Trusts, which in turn cites no authority for the statement that lodging with and acceptance by the land trustee is necessary for perfection of an ABI. Thus, the *FDIC* court concluded that absent reference to the UCC or other authority, Kenoe's treatise was unpersuasive. *Id.*

15. Second, the *FDIC* court described the *Sundberg* court as providing in dicta that an assignment "must be signed by all the appropriate parties, including the [t]rustee." *Id.* at 920, quoting *Sundberg,* 103 Ill.Dec. at 306, 501 N.E.2d at 327. The *FDIC* opinion correctly pointed out that *Sundberg* failed to cite any authority or

provide any statutory analysis in support of such statement. *Id.* Thus, neither *Sundberg* nor *Einoder* are controlling or persuasive authorities.

16. In *Sundberg,* the trust agreement contained a provision which was practically identical to language contained in the trust agreement in *FDIC* and in the Trust Agreement at issue here. Specifically, the trust agreement in *Sundberg* provided:

"No assignment ... will be binding *on the trustee* until the original or duplicate of the assignment is lodged with the trustee, and every assignment ... which shall have not been lodged with the trustee shall be void as to all subsequent assignees or purchasers without notice." *Id.,* quoting *Sundberg,* 103 Ill.Dec. at 306, 501 N.E.2d at 327 (emphasis added).

17. The court in *FDIC* found that failure to comply with such a provision could mean that the assignment was not effective with respect to either the land trustee or a subsequent assignee or purchaser without notice. *Id.* However, the opinion proper reasoned that such provision did not say and did not mean that the ABI was not effective as between the assignor and the assignee. *Id.*

18. Similarly, the Trust Agreement cannot be construed as releasing Debtor from her obligation to honor her ABI to First State. *See Id.* The language contained in the Trust Agreement does not on its face affect the effectiveness of the ABI as between Debtor and First State.

19. Thus, Illinois law does not require endorsement or any form of lodging on the part of the land trustee for perfection of an ABI.[3] The Court does note that ideally, a

---

**2.** Although this Court follows the reasoning of the District Court in *FDIC,* it is not bound to do so. *See First of America Bank v. Gaylor,* 123 B.R. 236, 242 (Bankr.E.D.Mich.1991) (in which the court found that the decision of an individual district court judge in a multi-judge district does not constitute the decision of the district court itself so as to bind bankruptcy judges within that district).

**3.** The court in *FDIC* found that even if Illinois law did require lodgment of an ABI with the land trustee in order to perfect the assignment, lodgment had in fact occurred when the trustee received physical possession of the ABI and kept

it in his land trust files. *FDIC,* 80 B.R. at 920–21. The fact that the trustee had refused to accept the ABI upon an earlier submittal was unimportant. *Id.* However, even if this Court were to follow *FDIC* by finding that physical possession in a land trustee's files constitutes lodging, from the evidence here lodging did not take place until January 31, 1991. Testimony by an employee of Parkway Bank revealed that Parkway Bank held the first set of original assignment documents merely as an accommodation to Mr. Wexler, attorney for both Parkway Bank and First State, and that such holding

lodging requirement should be required in order to provide notice to creditors and other interested parties. However, as in *Loop Hospital*, this Court is unwilling to contradict Illinois authority on the subject, and to infer such requirement where the Illinois legislature has been silent. *See Loop Hospital*, 50 B.R. at 569. Under the UCC, there is no reason why an ABI should not be binding upon a debtor from the moment he or she signs it.

■ 20. Accordingly, the Court need only look to the requirements for attachment provided in Section 9–203 of the UCC to determine whether and when the Assignment was perfected. First, it is undisputed that the Security Agreement and Assignment were in the possession of First State on November 29, 1988 after Debtor executed said documents. *See* Ill.Rev.Stat. ch 26, ¶ 9–203(1)(a). Second, it is also undisputed that Debtor had rights in the collateral, or, trust res. *See* Ill.Rev.Stat. ch. 26, ¶ 9–203(1)(c). With respect to the last requirement, Debtor contends that no value was given by First State in exchange for the security interest in the ABI. However, the ABI was supported by consideration since it served to secure Debtor's guaranty of APG's debt to First State.

21. Accordingly, because requirements under Section 9–203 have been met, the Security Agreement and Assignment were perfected and enforceable against Debtor as of the time they were executed by Debtor and placed in the possession of First State on November 29, 1988. Thus, because perfection occurred outside of the 90 days prior to the filing of the bankruptcy petition, the ABI is not voidable as a preference under Section 547 of the Bankruptcy Code, Title 11 U.S.C. § 547.

*Section 544 of the Bankruptcy Code*

■ 22. Debtor argues that because a debtor in possession takes the rights of a trustee under Section 1107(a) of the Code[4],

the Assignment at issue is voidable by Debtor pursuant to her rights as a hypothetical bona fide purchaser without notice under Section 544(a)(3).

23. Section 544(a)(3) provides in pertinent part:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists. 11 U.S.C. § 544(a)(3).

24. Debtor is correct in her assertion that a debtor in possession in a Chapter 11 proceeding may take advantage of the avoiding powers under Section 544. Ginsberg, Bankruptcy, § 9.01[a] (2d ed. 1990). However, Debtor's argument under Section 544(a)(3) still fails because this Court has found hereinabove that the Assignment was perfected on November 29, 1988, approximately two years prior to commencement of this bankruptcy proceeding. Section 544(a) clearly cannot be used by a trustee, or, debtor in possession,

to attack transactions completed or perfected under nonbankruptcy law when the petition is filed by or against the debtor. Although perfected transactions might be vulnerable under other avoiding powers such as the preference provision, properly perfected transactions are not vulnerable under Section 544(a). Ginsberg, Bankruptcy, ¶ 9.01[d] (2d ed. 1990).

First State's security interest in the ABI was perfected two years prior to the time

---

without endorsement was contrary to its normal policy.

**4.** Section 1107(a) provides in relevant part:

... a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, ... of a trustee serving in a case under this chapter.... 11 U.S.C. § 1107(a).

Debtor's hypothetical lien was perfected, which under Section 544 occurs at the time the case is commenced. Thus, even if Debtor were a hypothetical bona fide purchaser without notice, Debtor could not avoid First State's security interest.

25. The Court has already determined under Illinois law that an ABI is perfected once requirements of UCC § 9–203 are met, and that the Assignment here met those requirements. Accordingly, the Assignment was perfected on November 29, 1988. Debtor's arguments regarding her avoiding powers under Section 544(a) merely reiterate her previous argument regarding the necessity of lodging for perfection of an ABI, which argument this Court has rejected under Illinois law.

26. Thus, Debtor cannot avoid the Assignment pursuant to either Section 544(a)(3) or Section 547 of the Code since the Assignment was perfected prior to commencement of the case and outside the ninety day preference period.

### Adequate Protection of First State

27. At trial Mr. Goode testified regarding the assets of APG. On the basis of that testimony, the Court concluded that the assets of Debtor and APG did not exceed the sum of $172,500. The Court is not entirely convinced that certain items, such as accounts receivable owed APG, will actually be netted; however, Mr. Goode's testimony was the only, and therefore the most reliable, evidence available to the Court.

28. Because there is only an estimated $172,500 in assets to secure a debt of approximately $195,000, First State is clearly undersecured. *See* 11 U.S.C. § 362(d)(1) (which provides for relief from the automatic stay for cause, including the lack of adequate protection).[5] The gross value of the home is estimated to be $250,000. The net proceeds of a sale of the home, after taking into account an average of 6 percent broker's fee and $1,000 in miscellaneous closing costs, would be $234,000. In light of Debtor's $40,000 equity in the home, First State therefore has an equity cushion of approximately 3.85 percent.[6] Given today's volatile real estate market, an equity cushion of even 15 percent could be insufficient to protect First State's secured position.

29. Mr. Goode testified that APG would be able to make its loan payments, in the amount of $2,700 per month, beginning June 1, 1991. The Court finds that in addition to the above equity cushion said payments would provide adequate protection to First State on its outstanding loan to APG. The Court therefore denies First State's Motion to Modify the Automatic Stay so long as said adequate protection payments are made to First State.

### Conclusion

30. Accordingly, the Court has entered its previous Order of May 13, 1991, which denied the Motion of First State Bank of Chicago to Modify the Automatic Stay. That Motion was, however, denied without prejudice to renewing the Motion upon failure of Alexander P. Goode and Associates, Inc. or Debtor to make the monthly payments of $2,700 that the Court found necessary to provide adequate protection to First State.

5. Because the parties have stipulated that Debtor has equity in the trust res in the amount of approximately $40,000, First State cannot seek to modify the automatic stay under 11 U.S.C. § 362(d)(2), which provides for relief from the stay if a debtor has no equity in certain property and said property is not necessary to an effective reorganization. *See* 11 U.S.C. § 362(d)(2).

6. Net of sale $234,000 less $40,000 equity = $194,000, less $184,854 due First State = $9,146 ÷ $234,000 = 3.85%.