HELEN B. WALSH *et al.*, Plaintiffs-Appellees, v. FIRST NATIONAL BANK OF JOLIET, Defendant-Appellant.

Third District   No. 3—85—0304

Opinion filed January 9, 1986.

HEIPLE, P.J., specially concurring.

George F. Mahoney III, of Herschbach, Tracy, Johnson, Bertani & Wilson, of Joliet, for appellant.

Robert C. Lorz, of Stefanich, McGarry, Wols & Okrei, Ltd., of Joliet, for appellees.

JUSTICE SCOTT delivered the opinion of the court:

The plaintiffs, Helen and Leanne Walsh, brought the instant action seeking, *inter alia,* to enjoin the defendant, First National Bank of Joliet (First National) from having certain of its shares sold to satisfy outstanding notes from Helen and Robert Walsh. The circuit court granted a preliminary injunction against the sale and certified the case for interlocutory appeal.

Robert Walsh is the owner of Joliet Blacktop, Inc. During October and November of 1984, Joliet Blacktop gave four promissory notes to First National totaling $97,400. The notes were signed by Robert and Helen Walsh as officers of Joliet Blacktop and in their individual capacities. As security for the notes, 1,110 shares of First National were pledged. The signatures of both Robert and Helen appear on the stock power. The notes have never been paid. Robert Walsh has not been seen or heard from since January 23, 1985. Sometime prior to March 28, Helen informed First National that she had signed neither the notes nor the stock power and that her signature was a forgery. Her husband's signature appeared genuine.

On March 28, First National gave written notice to Helen of its intention to sell Robert's one-half interest in the First National shares pursuant to its security interest.

The instant complaint was filed on April 3. On April 4, a temporary restraining order was granted against the sale. The hearing for a preliminary injunction proceeded with a stipulation of the above recited facts and arguments of counsel. The court entered a preliminary injunction and First National appeals.

The trial court's holding was premised on section 8—308 of the Uniform Commercial Code (Ill. Rev. Stat. 1983, ch. 26, par. 8—308). In its memorandum decision, the circuit court held that the valid sig-

natures of both joint tenants were necessary to effectively pledge the securities. This is based on an interpretation of the term "appropriate person" in section 8—308(1). The court found that the husband alone was not an appropriate person to create any security interest in favor of the bank. With no valid security interest, the bank would be powerless to cause a sale even as to the husband's undivided one-half interest.

We disagree. We believe that the finding of the circuit court is contrary to persuasive case law of another jurisdiction, contrary to provisions of the Uniform Commercial Code and contrary to established public policy.

First, it should be noted that the question presented by this appeal has not been frequently litigated by courts of review in this country. There would appear to be no Illinois authorities on point, and only one other published decision is cited by the parties in their briefs. In *Ogilvie v. Idaho Bank & Trust Co.* (1978), 99 Idaho 361, 582 P.2d 215, the Supreme Court of Idaho faced a similar factual situation and there concluded that an undivided joint tenancy interest in investment securities was capable of being pledged despite the failure to join—indeed, without the knowledge of—the other joint tenant. (See also 22 U.C.C. Rep. 137 (same case).) Although the Idaho decision was not unanimous, we believe the dissent in that case is unpersuasive for the reasons that follow.

■ The circuit court here, and the dissenting judges in the *Ogilvie* case, rely on section 8—308, and the respective Idaho equivalent, which provides:

> "(1) An indorsement of a security in registered form is made when an appropriate person signs on it or on a separate document an assignment or transfer of the security or a power to assign or transfer it or when the signature of such person is written without more upon the back of the security.
>
> * * *
>
> (3) 'An appropriate person' in subsection (1) means
>
> * * *
>
> (e) where the security or indorsement so specifies more than one person as tenants by the entirety or with right of survivorship and by reason of death all cannot sign,—the survivor or survivors * * *." (Ill. Rev. Stat. 1983, ch. 26, par. 8—308.)

We agree that if all the interest in the security is to be assigned or transferred, then clearly all joint tenants must join in the indorsement. The drafters of the Commercial Code anticipated, however, that under certain circumstances, less than a whole interest in investment

securities might be assigned or transferred. In those circumstances the transfer is "effective to the extent of the indorsement." (Ill. Rev. Stat. 1983, ch. 26, par. 8—308(5).) Where the statute itself contemplates the assignment and transfer of partial interests in investment securities, the circuit court's finding to the contrary would appear to thwart the intention of the drafters.

■ Finally, it is a well-ingrained policy of this State to disfavor restraints on alienation. (*Baker v. Loves Park Savings & Loan Association* (1975), 61 Ill. 2d 119, 333 N.E.2d 1.) Assuming, *arguendo*, that there are two plausible constructions of section 8—308, we should endeavor to adopt the construction which is consistent with public policy, specifically, the free alienability of property. The rule espoused by the dissenting opinion in *Ogilvie* would not only restrain the joint tenant from pledging his property as collateral, but it would also hamstring the sale or transfer of that property interest without the cooperation of other co-owners. In many instances, this rule would effectively render the undivided interest inalienable.

For all the foregoing reasons, we hold that the defendant bank obtained a valid security interest in Robert Walsh's undivided one-half interest. Accordingly, the judgment of the circuit court of Will County is reversed.

Reversed.

WOMBACHER, J., concurs.

PRESIDING JUSTICE HEIPLE, specially concurring:

The majority's reliance on the Uniform Commercial Code for guidance in this case is misplaced. The answer is not there. In fact, the patchwork quoting, editing and citing of the statute by the majority adds neither light nor guidance to the problem.

Admittedly, the Code permits the sole owner of a certificate of stock to transfer or pledge less than all of those shares if the endorsement so states. That is to say, a shareholder may transfer his shares in smaller blocks than what is stated on the face of the certificate. Ill. Rev. Stat. 1983, ch. 26, par. 8—308(5).

However, the Code says nothing about the rights of less than all of the interest holders in a security to pledge or transfer their interests on their own signatures. Neither does it deal with the situation at hand where one joint tenant both affixes his own signature and also fraudulently forges a joint tenant's signature in an attempt to pledge the entire security.

Although the majority is reversing the trial judge, the majority and the trial judge both fell into the same trap when they attempted to make the Code cover a situation that simply is not covered.

Since the Code does not deal with the situation at hand, the matter should be resolved with reference to the common law of joint tenancy. (Ill. Rev. Stat. 1983, ch. 26, par. 1—103.) This would support the *result* reached by the majority in light of the recent decision in *Harms v. Sprague* (1984), 105 Ill. 2d 215, 473 N.E.2d 930. There it was held that a mortgage by a joint tenant exists as a lien on his interest in the joint tenancy property so long as he lives but that such lien does not sever the joint tenancy and is, therefore, extinguished upon his death. In the case at hand, it is proper to recognize the validity of the pledge to the limited extent of what Mr. Walsh could pledge on his own signature. That was his undivided one-half ownership as a joint tenant in the securities.