CHRISTOPHER N. STOLLER *et al.*, Plaintiffs-Appellants, v. EXCHANGE
NATIONAL BANK OF CHICAGO, Defendant-Appellee.

First District (6th Division)   No. 1—89—2399

Opinion filed May 25, 1990.

Ronald H. Balson, of Chicago, for appellants.

Schwartz, Cooper, Kolb & Gaynor, of Chicago (Narcisse A. Brown and Eric S. Rein, of counsel), for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiffs, Christopher N. Stoller and Bertha Stoller, appeal from the order of the circuit court of Cook County in favor of defendant, Exchange National Bank of Chicago (Exchange). Plaintiffs contend that the trial court improperly found that Exchange had a security interest in land trust number 31875; that the trial court improperly found that the transfer of property out of trust was fraudulent in law; and that the trial court's judgment order was inconsistent and improperly adjudicated the rights of nonparties.

In 1974, Bertha and Russell Stoller purchased a parcel of property. They built a single-family residence on the property in 1975. Their son, Christopher Stoller, lived at that residence from April 30, 1975, until August 1984. On November 23, 1976, Bertha and Russell deeded the property into a land trust at Exchange, trust number 31875. The beneficiaries of the trust were Christopher and Bertha, as joint tenants with right of survivorship. Christopher held the written power of direction.

On November 15, 1977, Christopher executed a collateral assignment of beneficial interest in favor of Central National Bank (Central). The following day, Central agreed to loan Christopher $35,000. The loan was evidenced by a 90-day note. On April 10, 1978, Bertha executed a hypothecation agreement in favor of Central. The agreement provided that Central was to use Bertha's interest in trust number 31875 as collateral for any agreements to make, renew or extend loans to Christopher and his wife, Bernice Stoller.

On April 30, 1979, Central extended a loan to Christopher and Bernice in the sum of $401,750. The loan was secured by a pledge of a continued security interest in certain properties, including a 100% assignment of the beneficial interest in Exchange trust number 31875. This loan was renewed on October 29, 1979. A second loan in the sum of $20,000, secured by the same properties, was made on November 13, 1979.

Sometime prior to September 29, 1979, Central executed a release of the November 15, 1977, collateral assignment of beneficial interest under land trust number 31875. The release was signed by Patrick O'Malley, Central's second vice-president. A photocopy of the release was placed in the land trust file at Exchange. A second document, entitled "Direction to Execute and Deliver Documents," purported to release the same collateral assignment of beneficial in-

terest. This document also was signed by O'Malley and was dated January 8, 1980. O'Malley left the employ of Central on November 2, 1979. Christopher testified that he did not recall when he received this document, but he did remember inserting the date in the document. The document was never lodged with Exchange as land trustee for trust number 31875, and Christopher still has possession of the original.

The two loans were due and payable on or about February 11, 1980, but plaintiffs failed to pay the amounts owing. On April 1, 1980, Central filed a lawsuit to recover the indebtedness due on the notes. In August 1982, Exchange and Central merged, and the resulting entity was named Exchange. For purposes of this appeal, Central and Exchange will be treated as the same entity with regard to the loan transactions, and all references will be to Exchange.

In March 1985, Bertha told Christopher that the property should be given back to her to protect Christopher's children because of Christopher's financial problems. On March 11, 1985, Christopher and Bertha executed a direction to convey the property out of trust number 31875 to Joanne M. Pievitz. Exchange, as land trustee, executed a trustee's deed to that effect. This conveyance was not approved by Exchange in its capacity as lender. Also on March 11, 1985, Pievitz executed a quit claim deed in favor of Bertha. The conveyance out of trust was made without any money or property being paid or conveyed by Bertha to Christopher. On July 18, 1985, Christopher filed for relief under chapter 13 of the Bankruptcy Code.

On May 7, 1985, the trial court entered an order enjoining Christopher, Bernice and Bertha from transferring the property pending further order of court. This injunction was continued until the court's disposition of the merits of the case. On December 8, 1986, in contravention of the injunction, Bertha sold and conveyed the property to Richard M. and Diana M. Bligh for $180,000.

On June 1, 1987, judgment was entered against plaintiffs and in favor of Exchange for the sum of $387,001.93 on the April 30, 1979, note, and for $27,653.86 on the November 13, 1979, note. Plaintiffs subsequently brought the present action, seeking to enjoin Exchange's sale of the property. Exchange counterclaimed, alleging that the transfer of the property out of trust was a fraudulent conveyance.

The trial court entered an order in favor of Exchange and against plaintiffs. The court found that Exchange had a valid and enforceable security interest in 100% of trust number 31875. The court further found that the second purported release was untrustworthy and therefore ineffectual. Finally, the court concluded that the conveyance out

of trust number 31875 was for no consideration and was made while Christopher knew he was indebted to Exchange and had insufficient funds to pay the debt. Thus, the court determined that the conveyance was fraudulent in law, that the deeds to Pievitz and Bertha were void, and that Exchange had an unreleased security interest in 100% of the property, against which Exchange could satisfy its judgment against plaintiffs.

Plaintiffs first allege that the trial court erroneously concluded that Exchange, as the surviving entity of the Central-Exchange merger, had a valid and enforceable security interest in trust number 31875. In support of this allegation, plaintiffs assert that the release executed sometime prior to September 29, 1979, operated to destroy the existing assignment of beneficial interest. Thus, plaintiffs conclude that Exchange released its security interest in the April 30, 1979, note. Further, plaintiffs assert that the renewed note, as well as the second note, could not be secured by a 100% assignment of beneficial interest in trust number 31875 because that assignment had been released.

Plaintiffs correctly note that the September 29, 1979, release operated to release the security interest in trust number 31875 granted to Exchange by an assignment of the beneficial interest in that trust on November 15, 1977. The release, however, does not reflect when this assignment of beneficial interest was accepted by Exchange. Thus, there is no indication as to which lending transaction this assignment, and subsequent release of assignment, applied. Significantly, however, on November 16, 1977, the day after the creation of the assignment, Exchange agreed to loan plaintiffs $35,000 secured by a 100% assignment of beneficial interest in trust number 31875. In our view, it appears that the release was meant to apply to that lending transaction, rather than to the lending transaction under our consideration. Accordingly, we will consider the transaction, as did the trial court, without reliance on either the November 15, 1977, assignment or the September 29, 1979, release as neither is necessary to our resolution of this appeal.

■ The principles applicable to acquiring a security interest in the beneficial interest of an Illinois land trust are the same as those applicable to acquiring a security interest in personalty. (*St. Charles Savings & Loan Association v. Estate of Sundberg* (1986), 150 Ill. App. 3d 100, 501 N.E.2d 322.) The creation of a security interest in personal property is governed by Article IX of the Uniform Commercial Code. (Ill. Rev. Stat. 1979, ch. 26, par. 9—101 *et seq.*) A security interest is enforceable against a debtor or third parties with respect

to the collateral and attaches when the following three steps have been taken:

"(a) the collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral ***; and

(b) value has been given; and

(c) the debtor has rights in the collateral." Ill. Rev. Stat. 1979, ch. 26, par. 9—203.

■■ We believe that all three events specified by section 9—203 have occurred in the transaction under our consideration. Exchange possessed signed notes granting Exchange a security interest in a 100% assignment of beneficial interest in trust number 31875; Exchange gave value to plaintiffs by loaning various sums of money; and plaintiffs had rights in the collateral.

■■ Plaintiffs argue that Exchange has failed to satisfy the first prong under section 9—203. Plaintiffs maintain that because the assignment of beneficial interest in the trust was released sometime prior to September 29, 1979, Exchange could not have a security interest in the trust because the collateral, in the form of the assignment, no longer existed. This argument, however, ignores the fact that on April 10, 1978, Bertha signed a hypothecation agreement which, we believe, was an effective assignment of the beneficial interest in the trust to Central. Thus, although the release bearing a photocopy stamp date of September 29, 1979, may have operated to release the assignment of beneficial interest acknowledged by Exchange on November 15, 1977, that release in no way effected the hypothecation agreement.

■■ With respect to the hypothecation agreement, plaintiffs initially urge this court to find the hypothecation agreement invalid for purposes of our analysis of the security interest issue. Plaintiffs note that the trust agreement provides as follows:

"No assignment of any beneficial interest herein shall be binding on the trustee until the original or a duplicate of the assignment *** is lodged with the trustee, and every assignment *** which shall not have been lodged with the trustee shall be void as to all subsequent assignees or purchasers without notice."

Although the hypothecation agreement was not lodged with the land trustee, our analysis does not involve the binding of the land trustee, an assignee, or a purchaser without notice. Thus the provision which plaintiffs cite is inapposite to the situation under our analysis and does not affect our interpretation of the hypothecation agreement.

■ A hypothecation agreement transfers the thing pledged to the debtor to enable the debtor to use the thing pledged as if it were the debtor's own collateral. (See *In re Horowitz Will* (1952), 114 N.Y.S.2d 700; *Moore v. Wardlaw* (Tex. App. 1975), 522 S.W.2d 552.) The hypothecation agreement which Bertha executed provided in pertinent part as follows:

"In consideration of your making, renewing or extending a loan or loans to Christopher N. Stoller and Bernice Stoller hereinafter referred to as the 'debtor', for which the following property belonging to me has been rendered to you as collateral, to wit: Exchange National Bank Trust No. 31875 and for the purpose of enabling said debtor to obtain credit therefor, *** I do hereby assign, release and transfer unto said debtor all of my right, title and interest in and to said property, and hereby expressly authorize said debtor to pledge or hypothecate, all or any part of said property for the indebtedness aforesaid, and all renewals and extensions thereof, and also for any and all other indebtedness of the same debtor to you whether alone or with others, direct or indirect, absolute or contingent and howsoever acquired by you, created at any time before this authorization shall have been revoked in writing and all renewals and extensions thereof."

Thus, the hypothecation contemplates more than one loan or renewal of loans and specifies that the hypothecation is to be effective unless "revoked in writing." There is no such written revocation in the record and, accordingly, that agreement was effective at all times after April 10, 1978. In our view, the agreement operated to assign the beneficial interest in trust number 31875 to Exchange.

■ An assignment occurs when there is a transfer of some identifiable interest from the assignor to the assignee. (*Klehm v. Grecian Chalet, Ltd.* (1987), 164 Ill. App. 3d 610, 518 N.E.2d 187.) Generally, no particular form of assignment is required; any document which sufficiently evidences the intent of the assignor to vest ownership of the subject matter of the assignment in the assignee is sufficient to effect an assignment in equity. (*Evangelical Slovak Women's Union v. Papanek* (1956), 8 Ill. App. 2d 298, 132 N.E.2d 20.) A valid assignment need only describe the subject matter of the assignment with sufficient particularity to render it capable of identification. *Klehm v. Grecian Chalet, Ltd.*, 164 Ill. App. 3d 610, 518 N.E.2d 187.

■ ■ The intent of the parties to an assignment is a question of fact to be derived not only from the instrument executed by the parties, but also from the surrounding circumstances. (Ill. Rev. Stat.

1979, ch. 26, par. 1—201(3); *Klehm v. Grecian Chalet, Ltd.*, 164 Ill. App. 3d 610, 518 N.E.2d 187; *Rivan Die Mold Corp. v. Stewart-Warner Corp.* (1975), 26 Ill. App. 3d 637, 325 N.E.2d 357.) The hypothecation agreement here unequivocally shows that Bertha intended to assign the beneficial interest in trust number 31875 to Exchange in exchange for Exchange's agreement to make, renew or extend loans to plaintiffs. Although it is true that where, as here, property is held in joint tenancy, all joint tenants must join in the indorsement if all the interest in the security is to be assigned or transferred (*Walsh v. First National Bank* (1986), 140 Ill. App. 3d 689, 489 N.E.2d 337), a review of the record reveals that Christopher did indorse the assignment by signing the loan agreement which reflected a 100% assignment of the beneficial interest in the trust. In fact, Christopher admitted that the November 13, 1979, note was secured by a collateral assignment of the beneficial interest in trust number 31875. Moreover, the documents in the record which portray the relationship between Exchange and plaintiffs indicate that the entire beneficial interest was continually used as security collateral.

In light of the hypothecation agreement, the surrounding documentation, and the testimony of Christopher, we find that the trial court properly determined that Exchange had an enforceable 100% security interest in the property. All of the requirements of section 9—203 were met. We note that plaintiffs had actual notice of the use of the assignment as collateral and, accordingly, are not prejudiced in any way by our interpretation of the transactions.

Plaintiffs next contend that the January 8, 1980, direction operated as a release of the security interest in trust number 31875. We believe, however, that the trial court properly concluded that the direction was untrustworthy and, therefore, ineffectual.

■ The direction was signed by O'Malley and was dated January 8, 1980. It is undisputed that O'Malley left the employ of Exchange two months prior to that date. Thus the document was not signed by a duly authorized agent of the bank. Moreover, O'Malley testified that the form was not the type he would have used to release collateral interests in trusts, and the language utilized is not the language he would have used to release such an interest. He stated that he would not have signed a document in that form. Significantly, the document contains two different styles of typeface. The "release" language and the date are in the same style of typeface. Christopher admitted that he filled in the date. In view of this evidence, we find that the trial court's conclusions with regard to the trustworthiness of the document were appropriate. The direction did not operate to release Ex-

change's 100% security interest in the property.

Plaintiffs next contend that the transfer of the property out of trust number 31875 and the accompanying transfer of the property to Bertha was not a fraudulent conveyance.

Illinois statutory law operates to void conveyances which are "made with the intent to disturb, delay, hinder or defraud creditors." (Ill. Rev. Stat. 1979, ch. 59, par. 4.) Illinois courts have divided these void transactions into two categories, fraudulent in law and fraudulent in fact. (See *Harris v. Aimco, Inc.* (1978), 66 Ill. App. 3d 60, 383 N.E.2d 631.) Our analysis will focus on fraud in law. Fraud in law will be found when a conveyance is made for inadequate or no consideration. (*First Security Bank v. Bawoll* (1983), 120 Ill. App. 3d 787, 458 N.E.2d 193.) Fraud is presumed in these circumstances (*Harris v. Aimco, Inc.*, 66 Ill. App. 3d 60, 383 N.E.2d 631), and intent is immaterial. (*Birney v. Solomon* (1932), 348 Ill. 410, 181 N.E. 318; *Anderson v. Ferris* (1984), 128 Ill. App. 3d 149, 470 N.E.2d 518.) To prove fraud in law, there must be a voluntary gift, an existing or contemplated indebtedness, and a failure of the debtor to retain sufficient assets to pay the indebtedness. *Mills v. Susanka* (1946), 394 Ill. 439, 68 N.E.2d 904; *First Security Bank v. Bawoll*, 120 Ill. App. 3d 787, 458 N.E.2d 193.

All three requirements are satisfied here. First, the conveyance out of trust to Bertha was made without any money or property being paid or conveyed by Bertha to Christopher. Bertha told Christopher to give the property back to her to protect Christopher's children because of Christopher's financial problems. Christopher acknowledged that the transfer was made for no consideration. Plaintiffs argue that Bertha could not have received as a gift that which she already owned, and maintain that Christopher was named as a joint tenant merely for convenience or as a nominee. These contentions, however, are contrary to the evidence presented at trial. Christopher held himself out to Exchange, and to others, in his personal financial statement and in his 1980 bankruptcy petition as having a beneficial ownership in the property. He cannot protest now that his ownership interest was merely a convenience to his mother. The trial court properly concluded that the transfer of Christopher's interest in the property was a voluntary gift to Bertha.

Additionally, the trial court properly concluded that the other elements necessary to prove fraud in law had been established. Exchange's pending suit against plaintiffs clearly was a contemplated indebtedness. Further, Christopher admitted that he had no assets with which he could satisfy the indebtedness either before or after the con-

veyance. Thus, the elements required to show fraud in law have been proved.

Plaintiffs further argue, however, that Exchange cannot seek relief for a fraudulent conveyance because Exchange actively consented to and participated in the transfer by executing the trustee's deed on March 11, 1985.

█ Equitable estoppel arises through a party's voluntary conduct whereby it is precluded from asserting its rights against another who in good faith relied upon such conduct and was thereby led to change his position to his detriment. (*Searcy v. Chicago Transit Authority* (1986), 146 Ill. App. 3d 779, 497 N.E.2d 410.) Estoppel must be proved by clear, unequivocal evidence. *Gary-Wheaton Bank v. Meyer* (1984), 130 Ill. App. 3d 87, 473 N.E.2d 548.

█ Here, there is no evidence to support plaintiffs' estoppel argument. Exchange, as land trustee, was ordered to convey the property out of trust. Christopher held the power of direction over the trust and, therefore, had the right to order the trustee to convey the property. (See *Wachta v. First Federal Savings & Loan Association* (1981), 103 Ill. App. 3d 174, 430 N.E.2d 708.) Exchange, as trustee, was obligated to follow this direction. Exchange, as lender, however, had nothing to do with the transaction. The record is devoid of any evidence that Exchange, as lender, ever approved, consented to, or authorized the conveyance of title out of trust number 31875. The trial court correctly determined that Exchange was not estopped from recovering for the fraudulent conveyance, and we will not disturb its finding of fraud and the subsequent setting aside of the conveyance.

Plaintiffs finally contend that the trial court erred in ordering that the property was subject to the payment of Exchange's judgment. Plaintiffs note that the court found that the conveyance to Bertha was void, but additionally found that the Blighs "took title" to the property subject to Exchange's claims. Plaintiffs argue that these findings are inconsistent. Plaintiffs additionally argue that the order itself is void and unenforceable as it adjudicates the rights of nonparties.

█ We do not believe that the trial court's order was inconsistent. The judgment order provided that "third parties, Richard M. Bligh and Diana W. Bligh, took title subject to Exchange National Bank of Chicago's lis pendens notice *** and they, therefore, took title subject to this court's order." Thus, the order properly reflects that the property was subject to application to the payment of Exchange's judgment. (See *DeMartini v. DeMartini* (1943), 385 Ill. 128, 52 N.E.2d 138.) A fraudulent transfer of property is void only as

against creditors, and only to the extent to which it may be necessary to deal with the conveyed estate for the creditor's satisfaction. (*De-Martini v. DeMartini*, 385 Ill. 128, 52 N.E.2d 138.) The trial court's order was not erroneous.

■■■ Moreover, the trial court properly determined that the Blighs were not necessary parties to this action. Initially we note that plaintiffs are not the proper parties to raise this contention. An appellant can only assign as error those rulings prejudicial to him. (*Gordon v. Gordon* (1955), 6 Ill. 2d 572, 129 N.E.2d 706.) The trial court's ruling with respect to the Blighs does not affect plaintiffs and thus cannot serve as a basis of their appeal. Moreover, the record shows that Exchange filed a *lis pendens* notice of its claim. Upon the filing of a *lis pendens* notice, anyone who acquires a right or interest in property during the pendency of a suit concerning that property is charged with constructive notice of the suit and is bound by the result of that proceeding. Ill. Rev. Stat. 1989, ch. 110, par. 2—1901.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

EGAN and RAKOWSKI, JJ., concur.