WAGEMANN OIL COMPANY, Plaintiff-Appellant, v. MARATHON OIL COMPANY, Defendant-Appellee (William J. Lussow *et al.*, Defendants).

First District (5th Division)   No. 1—98—0553

Opinion filed June 30, 1999.

Gerald C. Risner, of Park Ridge, and Robert G. Epsteen, of Chicago, for appellant.

John H. Kallman, of Chicago, for appellee.

JUSTICE GREIMAN delivered the opinion of the court:

Plaintiff Wagemann Oil Company (Wagemann) appeals from an order denying its motion for summary judgment and granting summary judgment to defendant Marathon Oil Company (Marathon). Wagemann contends that the circuit court erred in determining that Marathon's judgment lien upon the real estate which was the *res* of an Illinois land trust was superior to Wagemann's security interest in the beneficial interest of that trust. We affirm.

This case involves the priority of the parties' rights to the proceeds from the sale of certain real property commonly known as 124 South Ela Road in Barrington, Illinois. Upon filing cross-motions for summary judgment, the parties agreed there were no material issues of fact. The relevant facts are as follows.

On June 1, 1973, an Illinois land trust, trust A-349, was established, vesting title to the real estate with First Arlington National Bank (First Arlington) as the trustee. The trust agreement provided that William J. Lussow and Jane E. Lussow owned the beneficial interest of trust A-349 and held the power of direction.

On October 18, 1973, the Lussows obtained a $60,000 loan from Central Federal Savings & Loan Association (Central Federal). The Lussows executed a note, and First Arlington, as trustee, executed the note and a mortgage encumbering the property.

In June 1977, William Lussow obtained a loan from First Arlington in the amount of $420,000 and executed a promissory note on June 3, 1977, for the amount of the loan made payable to First Arlington. The loan was secured by William Lussow's assignment of the beneficial interest in trust A-349 as well as other assets.

On June 23, 1977, the Lussows executed a junior assignment of their beneficial interest in trust A-349, including the power of direction, to Wagemann and a collateral pledge to Wagemann and others as security for debts due and to be due. Wagemann asserts this assignment was given in consideration for the agreement by Wagemann's

owner, Peter Spina, to cosign the note given to First Arlington for the $420,000 loan. Both documents stated that the assignment was junior to the assignment made on June 3, 1977, to First Arlington.

On June 23, 1977, William Lussow and Wagemann's attorney provided Robert Mills, the president of First Arlington, with the junior assignment and collateral pledge. Wagemann contends it lodged the document with the trustee by tendering it to Mills. The assignment was not signed or acknowledged by the trustee.

On July 18, 1978, First Arlington as trustee of trust A-349 conveyed the real estate to a nominee at the direction of the Lussows, who immediately conveyed the real estate to First Arlington as trustee under a new trust agreement, trust A-843.

In 1979, William Lussow filed suit against Spina in the circuit court, seeking a determination of the status of accounts between them.

On March 21, 1980, First Arlington released its security interest in the beneficial interest, which partly secured the loan for $420,000.

In 1981, the suit filed by William Lussow against Spina was transferred to the United States Bankruptcy Court. On February 18, 1992, the bankruptcy court required William Lussow to account to Spina for damages arising out of their business relationship.

On September 11, 1992, the Lussows directed First Arlington as trustee of trust A-843 to convey the property by quitclaim deed to themselves as tenants by the entirety.

On November 4, 1993, Wagemann attached a legal description of the property to the junior collateral assignment which had been given in 1977 with reference to the original land trust. This instrument was recorded with the county recorder.

On December 14, 1993, Wagemann filed suit against the Lussows in the circuit court seeking to set aside the September 11, 1992, transfer of the property to the Lussows as tenants by the entirety and to impose a constructive trust upon the property in its favor.

On March 10, 1994, Marathon obtained a judgment in the circuit court for $200,000 against the Lussows and recorded that judgment with the county recorder the same day.

On September 13, 1995, the federal government filed two tax liens against the Lussows with the county recorder.

On December 20, 1996, the United States Bankruptcy Court entered judgment for Spina against William Lussow for $741,451.99. The order stated that the damages were secured by the assignment of the beneficial interest in trust A-349 at First Arlington dated June 23, 1977.

On January 15, 1997, the circuit court entered an agreed order resolving Wagemann's lawsuit against the Lussows. The order stated in relevant part:

"2. On June 23, 1977, [the Lussows] assigned their beneficial interest in the land trust to Wagemann ***.

3. As a result of [the Lussows'] assignment, Wagemann held a valid, subsisting and continuous security interest in the beneficial interest in the property from June 23, 1977, until the present.

4. Without the consent or knowledge of Wagemann, the Lussows caused the property to be transferred to themselves as 'Tenants by the Entirety' by means of a Quitclaim Deed dated September 11, 1992 ***."

The order further directed:

"1. The property located at 124 South Ela Road, Barrington, Illinois has been subject to a valid, subsisting and continuous security interest in favor of Wagemann *** since June 23, 1977.

2. A constructive trust is imposed in favor of Wagemann *** and against the property in the form of a lien securing a debt in the amount of $741,561.99 as of June 23, 1977.

3. The Quitclaim Deed dated September 11, 1992, and recorded ***, deeding the property to William and Jane Lussow as 'Tenants by the Entirety' is declared void and of no effect."

Marathon was not a party to that lawsuit and the record contains no *lis pendens* notice to evidence the existence of the pending action.

On May 17, 1996, Central Federal filed this lawsuit to foreclose the original mortgage. Central Federal thereafter assigned the mortgage and note to Wagemann and Wagemann was substituted as the plaintiff and filed the appropriate amended complaint seeking foreclosure.

Both Wagemann and Marathon moved for summary judgment as to the priority of the various interests of the parties. The parties agreed that the original mortgage for $60,000 held priority upon foreclosure among all of the other interests. Wagemann and Marathon agreed that the federal government's interest was inferior to their claims. An order of default was entered against the other defendants.

On October 28, 1997, the circuit court entered partial summary judgment in favor of Marathon and against Wagemann as to the priority of interests. The court determined that the Central Federal mortgage now owned by Wagemann held first priority, Marathon's judgment lien held second priority, Wagemann's junior assignment of beneficial interest in trust A-349 held third priority, and the federal government's tax lien held fourth priority. The circuit court thereafter entered a decree and an amended decree of foreclosure and sale. Wagemann appealed.

■ Summary judgment is appropriate where the pleadings, depositions, and admissions, together with any affidavits, demonstrate that there is no genuine issue of material fact and that the moving party is

entitled to judgment as a matter of law. 735 ILCS 5/2—1005 (West 1996). The standard of review is *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992).

■ Wagemann argues that the circuit court erred in determining Marathon's judgment lien superior to Wagemann's junior assignment of the beneficial interest in trust A-349 because Wagemann's interest was perfected and filed before Marathon filed its interest with the county recorder. Marathon recognizes the general rule that a lien that is first in time has priority and is entitled to prior satisfaction out of the property it binds. *First State Bank v. De Kalb Bank*, 175 Ill. App. 3d 812, 817 (1988). Marathon contends, however, that by reason of the law pertaining to Illinois land trusts, Wagemann's interest, if valid, would only be an interest in personalty and does not bind the real estate itself. Thus, Marathon asserts that its interest is superior to Wagemann's interest.

■ An Illinois land trust is an arrangement under which legal and equitable title to real property is held by the trustee and the interest of the beneficiary is personal property. *Espevik v. Kaye*, 277 Ill. App. 3d 689, 694 (1996); *Klein v. La Salle National Bank*, 155 Ill. 2d 201, 207 (1993). A land trust beneficiary has the exclusive right to direct the trustee in dealing with the title and the owner of the beneficial interest is empowered to transfer his or her beneficial interest through an assignment. *Espevik*, 277 Ill. App. 3d at 694. An assignee of a beneficial interest in a land trust acquires only an interest in personal property; the transaction does not give the assignee a direct interest in the realty which is the *res* of the trust. *Melrose Park National Bank v. Melrose Park National Bank*, 123 Ill. App. 3d 282, 285 (1984). Based on these general principles, Marathon argues that its judgment lien, which attached to the real estate, must be superior to Wagemann's assignment of the beneficial interest of the land trust because Wagemann's interest could only attach to the personalty.

Both parties cite *First Federal Savings & Loan Ass'n v. Pogue*, 72 Ill. App. 3d 54, 55-56 (1979), in which the Pogues conveyed their real estate to a bank (Downers Grove), as trustee of a land trust. In December 1974, Downers Grove loaned money to Mr. Pogue's company pursuant to a promissory note of that date. The note was secured by an assignment of the beneficial interest in the land trust. Downers Grove later received a judgment in December of 1976 for the debt. A second bank (Oak Brook) also received a judgment against the Pogues in July 1976. Downers Grove conceded that its judgment against the Pogues was later in time than the Oak Brook judgment, but claimed its perfection of a prior security interest (the assignment of the beneficial interest) gave it priority. Oak Brook argued that no prior security

interest was perfected. The trial court ruled that Oak Brook's lien on the proceeds of the foreclosure sale was superior to Downers Grove's lien.

In reversing, this court stated:

"While a judgment becomes a lien on real estate when evidence of it is recorded in the county in which the real estate is located [citation], registration of a judgment against the beneficiary of an Illinois land trust in the county where the trust real estate is situated does not have the effect of impressing the real estate with a judgment lien." *Pogue*, 72 Ill. App. 3d at 56.

Thus, this court determined that when Oak Brook filed its judgment against Mr. Pogue, Mr. Pogue had no actual ownership or record title to property upon which a lien could be impressed. In fact, the record title at that time was in Downers Grove as trustee. *Pogue*, 72 Ill. App. 3d at 56. Downers Grove acquired no rights by recording its judgment. However, this court found Downers Grove's interest to be superior because Downers Grove's security interest in the Pogue beneficial interest attached and was perfected in December 1974 under article 9 of the Uniform Commercial Code (Ill. Rev. Stat. 1977, ch. 26, par. 9—101 *et seq.* (now 810 ILCS 5/9—101 *et seq.* (West 1996))). *Pogue*, 72 Ill. App. 3d at 56-57.

Wagemann contends that, pursuant to *Pogue*, this court should hold that its security interest attached to the beneficial interest as of June 23, 1977, and is therefore superior to Marathon's later acquired interest. We observe, however, that the property in *Pogue* remained in a land trust at the time of the assignment and at the time of both judgments. Thus, even if Wagemann's interest is perfected, the instant case is significantly different from *Pogue* because here the real estate was conveyed from the land trust to the Lussows as tenants by the entirety after it had been held in a land trust. The instant case presents a question of priority between Wagemann's asserted perfected security interest in the beneficial interest of the land trust and Marathon's asserted perfected judgment lien upon the real estate.

In *St. Charles Savings & Loan Ass'n v. Estate of Sundberg*, 150 Ill. App. 3d 100, 102 (1986), the Small Business Administration (SBA) guaranteed a loan made by a bank to a corporation. The loan was personally guaranteed by Mr. Sundberg, the president of the corporation, who assigned to the bank, as collateral, his beneficial interest in a land trust. Sundberg was the sole owner of the beneficial interest in the land trust, the real estate being subject only to the first mortgage held by St. Charles Savings & Loan Association (St. Charles). The corporation defaulted on the note and the SBA reimbursed the bank. The bank then assigned the note to the SBA, but failed to assign the

beneficial interest in the land trust. After Mr. Sundberg died, St. Charles foreclosed on the mortgage. *Sundberg*, 150 Ill. App. 3d at 103. The SBA joined the suit based on its guarantee of the loan. Mrs. Sundberg, as the assignee of the successor beneficiary of the land trust, and the trustee objected to the foreclosure and to the SBA's interest. *Sundberg*, 150 Ill. App. 3d at 103. The lender bank then attempted to assign the beneficial interest to the SBA, but this assignment was rejected by the trustee. The circuit court foreclosed the mortgage without referencing the SBA's interest. *Sundberg*, 150 Ill. App. 3d at 103. The bank then executed an assignment of the beneficial interest to the SBA. The circuit court denied the SBA's motion for an amended judgment and, after the sale, granted Mrs. Sundberg's petition asserting a right to the surplus of the foreclosure sale funds. *Sundberg*, 150 Ill. App. 3d at 104.

The *Sundberg* court determined that the SBA held a personal property security interest in the beneficial interest of the land trust, and to perfect this security interest, thereby taking priority over the rights of the debtor and third parties, the SBA must proceed under article 9 of the Uniform Commercial Code—Secured Transactions (Ill. Rev. Stat. 1983, ch. 26, par. 9—101 *et seq.*). *Sundberg*, 150 Ill. App. 3d at 105. Because there was no security agreement concerning the beneficial interest in the land trust until after the foreclosure, the government did not comply with the requirements of the Uniform Commercial Code. *Sundberg*, 150 Ill. App. 3d at 106.

The court further stated that "[a]ny surplus generated by a sheriff's sale in a foreclosure proceeding belongs only to the owner of equity of redemption [citations], and it may be reached only by creditors of the owner of the equity of redemption for the repayment of his debts." *Sundberg*, 150 Ill. App. 3d at 106. The trustee held the equity of redemption and Mrs. Sundberg held the beneficial interest in the trust. While the SBA was a creditor of Mr. Sundberg, it did not take action to reduce its rights to that of a judgment creditor and therefore it had no right to the surplus generated. The court explained:

> "A judgment creditor is entitled to share in the surplus generated at the foreclosure sale only to the extent that he has taken the proper steps to enforce his rights as a judgment creditor. [Citation.] Any interest which the SBA had was an interest in personal property and not a direct lien on the real estate since a judgment against a beneficiary does not create a lien against the title of real estate held in a land trust. [Citations.] *** Because the beneficiary in a land trust has no legal or equitable interest to the title to the real estate, a judgment would not create a lien against the beneficial interest thereof." *Sundberg*, 150 Ill. App. 3d at 106-07.

■ In order to be binding as against third parties, an assignment must be perfected in accordance with the explicit agreement between the parties. *Klingman v. Levinson*, 114 F.3d 620, 628 (7th Cir. 1997); see also *In re Goode*, 131 B.R. 835, 840-41 (Bankr. N.D. Ill. 1991), citing *Federal Deposit Insurance Corp. v. Wooten*, 80 B.R. 917, 920-21 (Bankr. N.D. Ill. 1987) (criticizing *Sundberg* and determining that Illinois no longer requires endorsement or "lodging" on the part of the land trustee for perfection of an assignment of a beneficial interest to at least be binding on the debtor). Regardless of the endorsement or "lodging" requirements, the ruling in *Sundberg* does not address the question at hand. *Sundberg* only discusses the rights of a holder of a security interest in a beneficial interest of the land trust against the rights of an assignee of the successor of the beneficial interest to the surplus funds from a mortgage foreclosure sale. *Sundberg* does not address the priority between a security interest in the beneficial interest and a judgment lien on the real estate.

■ ■ Marathon points out that section 12—101 of the Code of Civil Procedure (735 ILCS 5/12—101 (West 1996)) provides that a judgment is a lien on the real estate of the person against whom it is entered from the time a transcript, certified copy or memorandum of the judgment is filed in the office of the recorder in the county in which the real estate is located. Marathon received and recorded its judgment against the Lussows on March 10, 1994. Wagemann does not dispute this assertion, but contends that the circuit court's order of January 15, 1997, which declared the deed conveying the real estate to the Lussows as tenants by the entirety null and void, precludes Marathon's judgment lien from attaching to the real estate. Even if Marathon's judgment attached to the personalty of the beneficial interest owned by the Lussows, Wagemann maintains it would be inferior because of Wagemann's prior interest.

■ Marathon, however, contends that the circuit court's order dated January 15, 1997, cannot bind its interest because Marathon was not a party to the lawsuit between Wagemann and the Lussows. "The doctrine of *res judicata* bars the refiling of an action previously adjudicated on the merits when the action is directed against the same parties and involves the same claims." *DeLuna v. Treister*, 185 Ill. 2d 565, 572 (1999). The doctrine applies if three conditions are met: (1) a final judgment on the merits has been entered in the first lawsuit; (2) an identity of causes of action exists; and (3) the parties or their privies are identical in both lawsuits. *DeLuna*, 185 Ill. 2d at 572. Because Marathon did not participate in that lawsuit and there is no showing of privity between the parties, Marathon cannot be bound by the prior ruling. That order derived from an agreement between Wagemann

and the Lussows. Marathon was not joined as a party in that case and the Lussows clearly had different interests than Marathon.

■ Wagemann asserts that it recorded its junior assignment prior to the recording of Marathon's judgment and therefore Marathon had notice of its interest. However, we fail to see how the filing of a junior assignment of a beneficial interest in a trust would prevent attachment of the judgment lien against the real estate since even Wagemann concedes that a beneficial interest in a land trust is personalty, not realty. It cannot be a lien on the real estate itself. See *Melrose Park*, 123 Ill. App. 3d at 286.

■ Wagemann also contends that the circuit court's ruling in its favor as to its claim against the Lussows requires that its claim be fully satisfied because the Lussows made a fraudulent conveyance. "A fraudulent transfer of property is void only as against creditors, and only to the extent to which it may be necessary to deal with the conveyed estate for the creditor's satisfaction." *Stoller v. Exchange National Bank*, 199 Ill. App. 3d 674, 684-85 (1990). Wagemann argues that, under this rule, its claim must be satisfied first regardless of additional creditors' claims.

In *Stoller*, 199 Ill. App. 3d at 677-78, the Stollers assigned their beneficial interest in a land trust to a bank and then later directed the trustee to transfer the property out of the land trust. The real estate was then sold to third parties. The bank obtained judgments against the Stollers and sought a sale of the property. The Stollers brought suit to enjoin the sale. The bank counterclaimed, alleging that the transfer of the property out of trust was a fraudulent transfer. This court determined that the bank had an enforceable security interest in the land trust and found that the conveyance of the property out of the land trust was fraudulent. *Stoller*, 199 Ill. App. 3d at 682-84. This court affirmed the circuit court's conclusion that the third party purchasers "took title" to the property subject to the bank's claims. *Stoller*, 199 Ill. App. 3d at 684. The circuit court's order properly reflected that the property was subject to application of the payment of the bank's judgment because "[a] fraudulent transfer of property is void only as against creditors, and only to the extent to which it may be necessary to deal with the conveyed estate for the creditor's satisfaction." *Stoller*, 199 Ill. App. 3d at 684-85.

■ The *Stoller* case would seem to support Wagemann's argument that when Marathon filed its judgment it took its lien subject to Wagemann's prior security interest. However, the facts in *Stoller* indicate that the bank filed a *lis pendens* notice of its claim prior to the time the third-party purchasers took title to the property. *Stoller*, 199 Ill. App. 3d at 684-85. Upon the filing of a *lis pendens* notice, anyone who

acquires a right or interest in property during the pendency of a suit concerning that property is charged with constructive notice of the suit and is bound by the result of that proceeding. *Stoller*, 199 Ill. App. 3d at 685, citing Ill. Rev. Stat. 1989, ch. 110, par. 2—1901.

We cannot agree with Wagemann's assertion that the rule in *Stoller* requires the conclusion that because the transfer of the property to the Lussows as tenants by the entirety was fraudulent, Marathon's interest must be subject to Wagemann's interest. First, as noted, Marathon is not bound by this prior order. Second, at the time Marathon filed its judgment, Wagemann had not filed a *lis pendens* notice. There is no reference to such filing in the record.

The doctrine of *lis pendens* operates to avoid endless litigation of property rights. *Monreal v. Sciortino*, 238 Ill. App. 3d 475, 479 (1992). One who acquires a right or interest in property during the pendency of a suit concerning that property is bound by the result of the action. *Monreal*, 238 Ill. App. 3d at 479. The principle of *lis pendens* operates *in rem*. Therefore, persons not parties to the litigation are still bound by the litigation. *Monreal*, 238 Ill. App. 3d at 479. While the January 15 ruling resolved the issues between Wagemann and the Lussows, it did not affect Marathon's claim to a lien upon the real estate.

The parties both cite *Chicago Federal Savings & Loan Ass'n v. Cacciatore*, 25 Ill. 2d 535 (1962), as additional authority for their positions. In *Cacciatore*, 25 Ill. 2d at 537-38, the government sought priority for its tax lien against a beneficiary of a land trust over a second mortgage encumbering a parcel of real estate held in a land trust. The supreme court ruled that the federal tax lien was subordinate to the lien of the second mortgage. *Cacciatore*, 25 Ill. 2d at 548. It was conceded that the beneficiary's interest in the trust was personal property and that the government's lien did not attach to the real estate itself. *Cacciatore*, 25 Ill. 2d at 544. The government argued, however, that at the time its lien attached to the rights of the beneficiary-taxpayer, the second mortgage did not exist. At that time, the taxpayer-beneficiary had the right to direct a conveyance of the real estate to himself and if that had been done, the taxpayer-beneficiary would have received the real estate back, subject only to the first mortgage, and the government's tax lien could have attached. *Cacciatore*, 25 Ill. 2d at 544-45. The government argued that because its lien attached to the rights of the taxpayer at that time, it should stand in the taxpayer's shoes at that time. The supreme court rejected that assertion, stating:

> "We find no fault with this argument as it applies to the date of filing the lien, and the government could well have successfully pursued its remedies at that time. Since this was true, the govern-

ment now contends that the taxpayer could not thereafter, by his voluntary action, diminish the government's position. The government took none of the steps provided for the seizure of personal property provided by the Internal Revenue Code of 1954 [citation]. By failing to do so, it placed itself in a position similar to where its lien is filed against a depositor in a bank. While the lien does attach to the depositor's rights in the account, in the absence of a levy a transfer of the account by check or otherwise to a third party who takes it in good faith and for a good consideration, gives to the transferee a claim superior to that of the government. [Citations.] We have before us a situation in which the rights of innocent parties, heretofore secure in an area of stable real-estate law, have intervened and require consideration. The good faith, innocence, and lack of actual notice or knowledge of the second mortgagee is not disputed on this record." *Cacciatore*, 25 Ill. 2d at 545.

■ The analysis in *Cacciatore* supports our conclusion that Wagemann's interest in the beneficial interest of the land trust could not and did not attach to the real estate here. Wagemann may have had a perfected security interest in the beneficial interest, but like the government in *Cacciatore*, it did not take steps to have its interest attach to the real estate itself. We believe this to be the proper result despite the fact that Marathon is a judgment creditor, not a mortgagee as in *Cacciatore*. To hold otherwise would be inconsistent with the body of law holding that an interest in a beneficial interest does not attach to the real estate.

Wagemann urges this court to look to the "true ownership" of the property. In *People v. Chicago Title & Trust Co.*, 75 Ill. 2d 479, 488-89 (1979), the supreme court held that the beneficiary of a land trust should be considered an "owner" for the purposes of the real estate tax liability statute because the beneficiary retains most of the attributes of true ownership. See also *Chicago Patrolmen's Ass'n v. Department of Revenue*, 171 Ill. 2d 263, 273 (1996) ("in determining ownership of property for tax purposes, legal title alone is not the decisive factor; rather, the concern is with the 'realities of ownership' ").

Wagemann urges this court to expand this rule and consider its interest in the beneficial interest of the land trust to be essentially the same as ownership in the real estate. We decline Wagemann's suggestion and do not believe it is consistent with the supreme court's intent in *Chicago Title & Trust Co.* In *In re Estate of Crooks*, 266 Ill. App. 3d 715, 723 (1994), this court acknowledged the plaintiff's assertion that a land trust beneficiary has an interest in the real estate *res* "for some purposes," but the court clarified that those purposes have been limited to cases involving the statute of frauds (*IMM Acceptance Corp.*

574

*v. First National Bank & Trust Co.*, 148 Ill. App. 3d 949 (1986)), real estate taxation (*Chicago Title & Trust Co.*, 75 Ill. 2d 479), and eminent domain proceedings (*Department of Conservation v. Franzen*, 43 Ill. App. 3d 374 (1976)).

We hold that the circuit court did not err in determining that Marathon's judgment lien on the real estate was superior to Wagemann's security interest in the beneficial interest of the land trust.

For the reasons stated, we affirm.

Affirmed.

HARTMAN and THEIS, JJ., concur.